LUTHER E. HALL, Judge pro tem.
This is an appeal from a judgment maintaining an exception of no cause of action and dismissing plaintiff’s suit.
The plaintiff is the New Orleans Opera Guild Inc., a non-profit Louisiana corporation, organized for the purpose, among other things, of presenting musicals and other performances, in the city of New Orleans.
The defendants are two labor organizations, viz., Local 174, Musicians Mutual Protective Union, which represents the New Orleans musicians, and American Federation of Musicians, the National Union, with which the local is affiliated.
Plaintiff brought these proceedings seeking an injunction against the defendants and % monetary judgment for damages in the amount of $375,600, together with reasonable attorneys’ fees.
The petition itself occupies sixteen pages of the transcript, but its essential allegations are that plaintiff is engaged in the business of sponsoring cultural performances in the city of New Orleans, including performances by soloists, orchestras and Broadway musicals. Plaintiff secures these attractions either by direct contract with the artistic group itself or through booking agents.
Plaintiff has nothing to do with the employment of and no control over the various actors, artists and musicians composing the productions, it simply stages the show after it arrives in New Orleans and in that connection it itself employs the services of stage hands, electricians and property men, all of whom belong to various craft unions and with whom plaintiff has had no quarrel. It also in past years has had agreements with the local and national musicians’ unions, defendants herein, covering the employment of local musicians whose services might become necessary from time to time to complement the musicians travelling with the show; but the petition alleges that commencing with about the year 1957, the defendant Local Union demanded that plaintiff obligate itself by contract to hire ten musician members for each musical show without regard either to the number of musicians travelling with the show, or the desires or wishes of plaintiff or of the conductors or directors of the show. When plaintiff refused tó accede to this demand, the Local Unioh demanded that plaintiff agree to hire a certain fixed minimum of local musicians for each show and threatened that if petitioner did not enter into such an agreement, that the local union would cause petitioner to lose the services of all musicians, both local and national, by placing petitioner on an “unfair list”, and publishing same throughout the country. That when petitioner still refused, the threat was carried out and plaintiff was placed on the “unfair list”, which was published both locally and nationally, the result of which has been that plaintiff is not only unable to hire local musicians, but many shows have cancelled their contracts with plaintiff, due to the fact that the musicians travelling as an integral part of the productions refuse to perform under plaintiff’s sponsorship since they are all likewise members of locals affiliated with the defendant, National Union.
*360 Plaintiff alleges that the defendant Local Union has a monoply pertaining to the services of professional musicians in the New Orleans area in that all professional musicians who live and desire to perform publicly in the New Orleans area, are members of the local and further alleges that the defendant National Union, “by means of its agreements, combinations, charters, bylaws, arrangements, and conspiracies, directly and indirectly through its various local unions and local union members, has a monopoly pertaining to professional musicians throughout the entire nation, in that substantially all professional musicians in the nation are members of various local unions affiliated with the national union; that the said monopoly is so effective and complete that unless professional musicians in the United States become and remain members of some local union affiliated with the national union, such musicians find it impossible to secure employment in their chosen field”.
Plaintiff alleges that all of the wrongs complained of in its petition are part of an “illegal combination, conspiracy, agreement and arrangement, by and between the officers, directors, agents, employees and members of the defendant Local Union, and also by and between the said defendant Local Union and the defendant National Union; that the purpose and effect of said actions by said defendants has been to destroy petitioner’s business”; and that ■“one of the motivations of the said defendant Local Union in attempting to injure and destroy your petitioner’s business has been to eliminate and discourage competition in the field of theatrical and musical entertainment in the city of New Orleans”.
The petition concludes by alleging “that the actions of defendants, Local Union and National Union, in attempting to enforce their featherbedding demands, thereby stifling and damaging industry, enterprise and efficiencjq and in their efforts to induce other persons to breach contracts lawfully entered into with your petitioner, and in their efforts to eliminate your petitioner as a competitor in the field of musical entertainment in the New Orleans area, and in their use of their monopoly power over the supply of professional musicians both in the New Orleans area and elsewhere in the state” violate the laws and jurisprudence of this state, including the provisions of the State Monopoly Act. LSA-R.S. 51:121 et seq.
The prayer is for treble damages and attorneys’ fees under LSA-R.S. 51:137 and for various items of injunctive relief.
While, as initially stated herein, the present appeal is from a judgment maintaining an exception of no cause of action and dismissing plaintiff’s suit, the defendants-appellees strenuously urge this Court to consider and decide various other exceptions which were argued below but which were not passed upon by the trial court. Defendants have neither appealed nor answered the instant appeal, nor have they filed any exceptions in this Court. Ordinarily an exception not considered by the trial court is not before this court for review. State ex rel. Boucher v. Heard, 228 La. 1078, 84 So.2d 827.
However, one of the exceptions not considered by the trial court but urged upon us for decision is an exception to the jurisdiction of the state courts rationae materiae, and since no valid judgment can be rendered by a court if it lacks jurisdiction over the subject matter, the Court feels obliged sua sponte to consider this exception.
The exception is based upon defendants’ contention that this is a labor dispute affecting interstate commerce and that the jurisdiction of the state courts is pre-empted by the National Labor Relations Act, as amended, 29 U.S.C.A. § 151 et seq.
We do not agree with defendants’ contention.
The National Labor Relations Act finds its constitutional justification solely in the Interstate Commerce clause of the *361 Federal Constitution, art. 1, § 8, cl. 3 (American Communications Association, C.I.O. v. Douds, 339 U.S. 382, 70 S.Ct. 674, 94 L.Ed. 925) and the Act relates exclusively to interstate commerce, 29 U.S.C.A. § 141 et seq.
Now ever since the first “baseball case” (Federal Base Ball Club of Baltimore v. National League, 259 U.S. 200, 42 S.Ct. 465, 66 L.Ed. 898) the Federal Courts have consistently held that the business of giving sports exhibitions and the staging of other entertainments such as conducted by plaintiif here (where such productions are unconnected, as here, with other things such as, for example, the sale of broadcast rights. See Gardella v. Chandler, 2 Cir., 172 F.2d 402; Washington Professional Basketball Association v. National Basketball Association, D.C., 147 F.Supp. 154) does not constitute or affect interstate commerce. See Pappas v. American Guild of Variety Artists, D.C., 125 F.Supp. 343, and the many cases therein cited; also American Federation of Musicians v. Stein, 6 Cir., 213 F.2d 679; Philadelphia Orchestra Association, 97 N.L.R.B. 548. And since the business conducted by plaintiff is not interstate commerce and has no effect on it, the National Labor Relations Act has no application and there is no pre-emption of the State Courts’ jurisdiction.
Coming now to the exception of no cause of action, we see that plaintiff’s petition seeks injunctive relief and damages: (a) on allegations that defendants have placed plaintiff’s name on a so-called “unfair list”; (b) on allegations that defendants have induced or encouraged other persons to breach their contracts with plaintiff; and finally, but principally, (c) for injunctive relief and damages under the Louisiana Monopoly Law. LSA-R.S. 51:121 et seq.
a) As we have seen, the petition alleges that as a result of plaintiff’s refusal to negotiate and enter into a contract with the defendant Local Union relative to the employment of members of the Local Union, the two defendant Unions published plaintiff’s name in a so-called “unfair list”.
This action by defendants amounted to nothing more than the exercise of a legal right to publish the fact of the existence of a labor dispute and an effort to persuade others to join them. It is an exercise of the constitutional right of free speech, and stands on the same basis as peaceful picketing. Thornhill v. State of Alabama, 310 U.S. 88, 60 S.Ct. 736, 738, 84 L.Ed. 1093; Carlson v. People of State of California, 310 U.S. 106, 60 S.Ct. 746, 84 L.Ed. 1104; Cafeteria Employers Union, Local 302 v. Angelos, 320 U.S. 293, 64 S.Ct. 126, 88 L.Ed. 58; Douglas Public Service Corporation v. Gaspard, 225 La. 972, 74 So.2d 182, 186. It is consonant with the public policy of this state as expressed in Sec. 3(e) of Act 203 of 1934, now LSA-R.S. 23:841 (5).
Since peaceful picketing and the publication of “unfair lists”, while not unlawful per se, may become so if used for an unlawful purpose (see N. L. R. B. v. United Brotherhood, 10 Cir., 184 F.2d 60; United Brotherhood of Carpenters etc. v. Sperry, 10 Cir., 170 F.2d 863) we must consider whether defendants employed the “unfair list” for an unlawful object or purpose. The object and purpose as alleged by plaintiff was to compel plaintiff to sign a contract for the hiring of a minimum number of local musicians for every musical production staged by plaintiff — “featherbedding” as plaintiff terms it.
While the expression “featherbedding” may have undesirable connotations in the minds of some, the question is whether contracts such as the one proposed by defendants are unlawful. Plaintiff has pointed to no rule of law or jurisprudence declaring them so, and we have found none. The Federal Government, it is true, in the so-called Lea Act (47 U.S.C.A. § 506) has undertaken to regulate such contracts with: respect to Radio Broadcasting, and there-may be other statutory regulations which: treat of the subject as applied to limited. *362 fields, but we know of no general law or rule of jurisprudence, Federal or State, denouncing them. Defendants’ actions as alleged fall short of being illegal “exactions” even under the provisions of the National Labor Relations Act. See American Newspaper Publishers Ass’n v. National Labor Relations Board, 345 U.S. 100, 73 S.Ct. 552, 97 L.Ed. 852; also National Labor Relations Board v. Gamble Enterprises, 345 U.S. 117, 73 S.Ct. 560, 97 L.Ed. 864.
We conclude that in making use of an “unfair list” in order to compel plaintiff to sign a contract for the hiring of a minimum number of local musicians and in threatening to refuse and in refusing to work without such a contract defendants have merely exercised their legal right to organize, to bargain collectively, to peacefully picket and to refuse to work except under conditions satisfactory to themselves, and if plaintiff has suffered any damage as a result' thereof, it is darunum absque iAjuria.
b) Plaintiff’s petition states no cause of action insofar as it alleges that defendants have caused others to cancel their contracts with plaintiff. See Cust v. Item Company, Ltd., 200 La. 515, 8 So.2d 361, 363; wherein it said:
“But it is now well settled that one who is not a party to a contract is not liable in damages to one of the parties * * * for inducing the other party to breach the contract.”
c) The main contention that plaintiff makes and to which it devotes almost all of its voluminous petition, is that “defendants have engaged in various conspiracies, agreements, contracts and concerted plans of action whereby they have formed a complete monopoly over the services of all professional musicians for the sole and simple purpose of destroying plaintiff’s business”, and plaintiff pitches its case squarely on the provisions of the Louisiana Monopoly Law, LSA-R.S. 51:121 et seq., which provides in section 122 that:
“Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce in this state is illegal,”
and which provides in other portions thereof for injunctions at the suit of private persons (Sec. 129) and triple damages and attorneys’ fees to the person injured (Sec. 137).
Considered as a whole and in detail plaintiff’s petition discloses that this is simply a dispute over a contemplated contract of employment of members of the Local Union, and hence is a “labor dispute”. Compare the legislative definitions of “labor dispute” found in LSA-R.S. 23:821 (3) and in LSA-R.S. 23:862(4).
Now we find that LSA-R.S. 51:142 expressly exempts from the coverage of the Monopoly Act “any combination of laborers for the purpose of procuring an increase of wages or redress of grievances”. (Emphasis ours..)
To escape the effect of this exemption, plaintiff argues that this section was erroneously included in the Revised Statutes by the Reporter for the Louisiana Law Institute and should be declared null and void by this Court or alternatively that this Court should find the section inapplicable as the musicians’ union seeks neither an increase of wages nor a redress of grievances.
It is unnecessary to consider whether or not the Law Institute erred in including this section in the Revised Statutes. Suffice it to say it was included, it was adopted by the Legislature in 1950 and it is the law of the State. City of Alexandria v. LaCombe, 220 La. 618, 57 So.2d 206; State ex rel. Fudickar v. Heard, 223 La. 127, 65 So.2d 112.
The Newsom (Newsom v. Caldwell & McCann, La.App., 51 So.2d 393) and Perkins (Perkins v. Brothers of Christian Schools of Lafayette, La.App., 71 So.2d 400) cases cited by plaintiff in no way derogate from the holding in City of Alexandria v. LaCombe, supra.
*363 We find no merit in plaintiff’s argument that the purpose of the unions here was not for a “redress of grievances”. Obviously wherever there is a labor dispute, the purpose of Labor is to redress what is considers a grievance. Plaintiff argues that it is the one “aggrieved” that the defendants have no “grievance” to “redress”. Certainly the Courts cannot be called upon first to determine which disputant is right (and therefore has a valid “grievance”) before giving effect to the exemption contained in the law.
While the trial judge did not assign any reasons for maintaining the exception of no cause of action and dismissing plaintiff’s suit, we are of the opinion for the foregoing reasons that the judgment is correct.
Affirmed.