McCALEB, Justice.
This is a suit by an employer of labor against a national labor union and its local affiliate to enjoin the union from continuing to include plaintiff on “unfair lists” published by them and for recovery of treble the damages plaintiff has allegedly sustained as the result of the asserted unlawful act of the defendants.
After a trial in the district court on a rule nisi for the issuance of a preliminary injunction, the suit was dismissed on an exception of no cause of action and on review by the Court of Appeal for the Fourth Circuit, the judgment was affirmed. See New Orleans Opera Guild, Inc. v. Local 174, etc., 127 So.2d 358. At plaintiff’s instance, we granted certiorari and the matter has been argued and submitted for our decision.
The facts of the case, as shown by plaintiff’s petition and the exhibits annexed thereto, are substantially as follows: Plaintiff is a nonprofit Louisiana corporation organized and engaged in the business of sponsoring, presenting and exhibiting musical and theatrical programs in the Greater New Orleans area, most of its productions being conducted at the Municipal Auditorium in the City of New Orleans. In arranging its musical programs, most of which are brought from New York and other metropolitan areas, it is essential that plaintiff employ local musicians to assist those brought with the show, as the troupe does not usually travel with a full orchestra. These supplementary musicians have, in the past and up until the year 1957, been employed through the defendant Local No. 174 Musicians Mutual Protective Union, which is affiliated with the national organization, American Federation of Musicians, the other defendant.
In 1957, however, the defendant local union demanded that plaintiff obligate itself by contract to hire no less than ten local musicians for each musical show sponsored by plaintiff, irrespective of the number of musicians travelling with the show or plaintiff’s desires or wishes. When plaintiff refused to accede, the defendant local demanded a contract for a fixed minimum of musicians for each type of show and informed plaintiff that, if it failed to bargain with it for a union-management contract, the services of all musicians, both local and national, would be unavailable and that plaintiff’s name would be placed on an “unfair list” which is published nationwide. Upon plaintiff’s continued refusal to negotiate, defendants carried out the threat and plaintiff’s name was placed on the “unfair list” which was published locally and nationally. As a result, plaintiff was not only unable to hire local musicians, as all *139 available were members of the union, but a number of productions theretofore booked by plaintiff cancelled their contracts as the musicians travelling with the shows refused to perform since they were all members of locals affiliated with the defendant national union.
Initially, plaintiff applied to the National Labor Relations Board for relief by filing charges against defendants with the Regional Director, in which it alleged the unions were engaged in unfair labor practices violative of Section 8(b) (6) of the National Labor Relations Act and also Subsection 4(A) and (B).' The Regional Director, conformably with law (see 29 U.S.C.A.App. Section 101.4), initiated an investigation of the matter and thereafter dismissed plaintiff’s charge on the ground that the evidence was insufficient to disclose a violation of the National Labor Relations Act. Plaintiff appealed from the adverse ruling to the general counsel of the N.L.R.B. (see 29 U.S.C.A.App. Section 101.6) who affirmed the Regional Director.
Plaintiff then filed the instant suit seeking an injunction and treble damages in the sum of $375,600, together with reasonable attorneys’ fees. The action is based almost exclusively, but not entirely, on the theory that the defendants have a monopoly of the labor market in musicians which is in restraint of trade, business and commerce and' thus violative of the State Monopoly Act, R.S. 51:121 et seq. Upon the issuance of a rule nisi for a preliminary injunction, defendants appeared and filed various exceptions, in conjunction with their return to the rule, including an exception to the jurisdiction ratione materia and an exception of no cause of action. On the return day, the judge heard testimony and argument and, thereafter, concluding that the exception of no cause of action was well founded, discharged the rule and dismissed the suit on that pleading. When the case reached the Court of Appeal, the exception to the jurisdiction ratione materia was considered ex proprio motu and overruled. However the court, being of the opinion that the district judge correctly dismissed the case on the exception of no cause of action, affirmed the judgment.
The Court of Appeal properly considered the plea to the jurisdiction, even though it was not passed on by the district judge, as jurisdiction of the subject matter is essential for the basis of a valid judgment. Hence, in our review of this matter on certiorari, we direct our immediate attention to whether defendants’ exception to the jurisdiction, which is based on the doctrine of Federal preemption, is well taken.
The doctrine of Federal preemption in labor cases rests on the theory that the National Labor Relations Act accords exclusive jurisdiction to the National Labor Relations Board over matters either prohibited by the Act or protected therein. See *141 Garner v. Teamsters, C. & H. Local Union, 346 U.S. 485, 74 S.Ct. 161, 98 L.Ed. 228; Weber v. Anheuser-Busch, Inc., 348 U.S. 468, 75 S.Ct. 480, 99 L.Ed. 546 and Mississippi Valley Electric Co. v. General Truck Drivers, etc., 229 La. 37, 85 So.2d 22. Since the exercise of jurisdiction over enterprises in interstate commerce by the N.L.R.B. is, to a certain extent, discretionary, situations could well arise where the State courts would be deprived of jurisdiction even though the N.L.R.B. had declined to take jurisdiction. In 1959 Congress sought to remedy this uncertainty as to the lack of a forum to hear grievances in such cases by amending the National Labor Relations Act to provide that, where the N.L.R.B. declined jurisdiction, the States were free to assume jurisdiction. See 73 Stat. 541, 29 U.S.C.A. Section 164.
However, this amendment does not, of itself, solve the problem of jurisdiction presented here as the N.L.R.B. has not declined to take jurisdiction of the matter. Rather, the reason why the Regional Director refused to issue a complaint after investigating plaintiff’s charges was because he found “ * * * insufficient evidence of violation * * * Such an order does not entail a determination of jurisdiction vel non since it is only in the issuance of a complaint that the Regional Director is required to pass on the matter of jurisdiction. 29 U.S.C.A.App. Sec. 101.8. Under these circumstances, then, this Court perforce must determine State jurisdiction ratione materia without any assistance from either the proceedings instituted by plaintiff before the N.L.R.B. or the recent amendment to the National Labor Relations Act which had as its purpose the solving of the jurisdictional dilemma sometimes presented in labor relations cases.
The National Labor Relations Act finds its authorization in the “commerce clause” of the United States Constitution (Article 1, Sec. 8, C1. 3) and it applies solely to “labor disputes affecting commerce”. 29 U.S. C.A. Sec. 141. It can hardly be doubted that plaintiff conducts an interstate business since its main pursuit is the sponsoring, arranging and presenting of various musical, theatrical and artistic productions which are brought by it to New Orleans from other States. The troublesome question here on the issue of jurisdiction is not as to the interstate character of plaintiff’s operations; rather, it is whether plaintiff is engaged in “commerce” within the meaning of that term as construed by the decisions of the Federal Courts.
The Court of Appeal, in a well-considered opinion, stated that:
“ * * * ever since the first ‘baseball case’ (Federal Base Ball Club of Baltimore v. National League, 259 U.S. 200, 42 S.Ct. 465, 66 L.Ed. 898) the Federal Courts have consistently held that the business of giving sports exhi *143 bitions and the staging of other entertainments such as conducted by plaintiff here (where such productions are unconnected, as here, with other things such as, for example, the sale of broadcast rights. See Gardella v. Chandler, 2 Cir., 172 F.2d 402; Washington Professional Basketball Association v. National Basketball Association, D.C., 147 F.Supp. 154) does not constitute or affect interstate commerce. See Pappas v. American Guild of Variety Artists, D.C., 125 F.Supp. 343, and the many cases therein cited; also American Federation of Musicians v. Stein, 6 Cir., 213 F.2d 679; Philadelphia Orchestra Association, 97 N.L.R.B. 548. And since the business conducted by plaintiff is not interstate commerce and has no effect on it, the National Labor Relations Act has no application and there is no pre-emption of the State Courts’ jurisdiction.” [127 So.2d 361.]
On the other hand, in contrast to the view of the Court of Appeal, it is apt to observe that the N.L.R.B. and the Federal Courts have not always been consistent in their rulings that sports exhibitions and theatrical entertainments do not affect “commerce” and therefore are not within the exclusive jurisdiction of the National Labor Relations Act. For instance, in the matter of American Federation of Musicians Local No. 24, of Akron, Ohio and Gamble Enterprises, Inc., 92 N.L.R.B. 1528 (1951), the ruling of the trial examiner that Gamble Enterprises Inc., which owned and operated a chain of theatres, was engaged in commerce within the meaning of the National Labor Relations Act was approved and affirmed.[1] The business of Gamble Enterprises was of a similar character to that conducted by the plaintiff herein, albeit operated on a much larger scale, which covered a network of theatres throughout the United States. Perhaps the case is distinguishable from this one on that basis for the examiner found, as a fact, that the monetary receipts were such as to bring the company within the yardstick laid down by the N.L.R.B. in determining whether the operation substantially affects commerce.
In Philadelphia Orchestra Assn., 97 N.L. R.B. 548 (1951) cited in the opinion of the Court of Appeal, it was held that, while the Board may “constitutionally” take juris *145 diction of symphony orchestras, it would not effectuate the purposes of the Act to do so as the impact on interstate commerce of the activities of a nonprofit organization, like the one there involved, was too remote “ * * * to warrant taking jurisdiction in a field where we have not previously asserted it.” [2] However, in Carroll v. Associated Musicians of Greater New York, 284 F.2d 91, decided by the United States Court of Appeal, Second Circuit, in November of 1960, the Court approved, pending trial on the merits, the issuance of a preliminary injunction by a Federal District Court against the defendant labor union which had put into effect a plan to provide welfare benefits for its members by charging a fee of $1 per musician for each single performance, this exaction to be paid by the hirer of the band, 1. e., the father of the debutante or of the bride or the college fraternity, etc. in addition to the regular charge for the music. On the issue of jurisdiction, the Court said that it could be more satisfactorily resolved on a full trial of the case.
Thus, it is seen that the question of Federal preemption of jurisdiction in matters like this is inconclusive and uncertain. Since the N.L.R.B. has, in a majority of cases, declined jurisdiction of labor disputes involving theatrical and musical entertainment, we do not think that the Court of Appeal erred in holding that our courts have jurisdiction of this controversy.
We pass on then to a consideration of defendants’ exception of no cause of action. Plaintiff’s petition for injunctive relief and damages is founded on allegations (1) that defendants, by the exercise of their monopoly power over the services of all professional musicians through the use of their unfair lists, have injured and, indeed, destroyed plaintiff’s business in violation of law, and (2) that defendants have also unlawfully induced others to break their contracts with plaintiff.
We find it difficult to perceive that these asserted grounds for the suit are cognizable in law and it is our opinion that the Court of Appeal was correct in affirming the judgment dismissing plaintiff’s case on the exception. The mere fact that a labor union, through a strike or boycott, damages an employer’s business does not give the employer a cause of action unless the method used by the union or the object of its endeavor is illegal.
The object of the local labor union in this case was to induce plaintiff to sign a contract whereby plaintiff would agree that, when it was presenting any theatrical or musical production which required an orchestra, such orchestra would *147 be composed of a set minimum number of musicians whether they were local or travelling with the show. Plaintiff has cited no law and we, like the Court of Appeal, can find none that would indicate that such an object is illegal.
Obviously, the purpose of the union in demanding such a contract was to provide greater employment opportunities for its members — a legitimate labor pursuit.[3]
Nor do we perceive that the methods employed by the defendants in attempting to coerce plaintiff to accede to its demand or to bargain with it as to a minimum number of musicians is reprobated by law. On the contrary, the use of an unfair list has been declared to be a legitimate means of advertising the existence of a dispute and the refusal of union members to hire their services to plaintiff without a contract is nothing more than a primary boycott which is in no sense a prohibited method of labor agitation. See Miami Federation of Musicians, etc. v. Wompearce, Inc. (Fla.) 76 So.2d 298, where this same method is discussed. As correctly stated by the Court of Appeal, this type of protest is expressly permitted by the “Little Norris-LaGuardia Act” by which labor practices in Louisiana are governed.
In truth, the gravamen of plaintiff’s case is that defendants, by having virtually all available professional musicians as members of the union, are violating the anti-monopoly law of this State (R.S. 51:121 et seq.) and, under R.S. 51:137, recovery of treble damages is sought. But, as found by the Court of Appeal, plaintiff has no *149 right of action under the anti-monopoly law against the defendants, as labor unions are specifically excluded therefrom by R.S. 51:142, which reads in part:
“Nothing in this Part shall * * * affect any combination of laborers for the purpose of procuring an increase of their wages or redress of grievances.”
Counsel for plaintiff profess that this exemption is ineffective because it was included in the Revised Statutes by error and that the compilers thereof have recognized in their reports that they entertain some doubt as to the legality of their action in placing R.S. 51:142, which was formerly Section 8 of Act 90 of 1892 (which had been repealed by Act 11 of the Extra Session of 1915), as part of the Revised Statutes of 1950.
The short answer to this proposition is that this provision exempting labor unions was included in the Revised Statutes and enacted into law by the Legislature. Hence, we are bound to give it full effect. City of Alexandria v. LaCombe, 220 La. 618, 57 So.2d 206; State ex rel. Fudickar v. Heard, 223 La. 127, 65 So.2d 112 and other cases.
Counsel for plaintiff alternatively contend that the defendant unions do not come within the purview of the exemption clause of R.S. 51:142, because they were neither seeking an increase of wages for the musicians nor were they attempting to redress a grievance with plaintiff. On the contrary, say counsel, plaintiff is the only party with a grievance.
We find no merit in this contention. The import of the language of the above quoted exemption is clear. It simply means that a labor union is to be excluded from the provisions of the anti-monopoly law when, and only when, it is functioning within the accepted purposes of a labor union, i. e., seeking increased wages or redressing grievances. When, as in this case, there is a labor dispute the labor union is exercising its traditional functions and is, in fact as well as law, seeking redress of a grievance. It may not be right in its demands but it nevertheless seeks to redress, as stated by the Court of Appeal, “ * * * what it considers a grievance”. Certainly, it cannot be gainsaid that the defendants were not attempting to redress a grievance in this matter, since their sole object was to compel plaintiff to sign a contract setting forth conditions which would provide employment for more union members than normally would be used by plaintiff.
The only other matter remaining for consideration is plaintiff’s allegation that defendants induced others to break contracts with plaintiff. That such conduct on the part of defendants is not actionable, per se, is well settled in this State. See Cust v. Item Company, 200 La. 515, 8 So.2d 361 and cases cited therein.
*151 The judgment of the Court of Appeal is affirmed.
HAMLIN, J., concurs in part and dissents in part with written reasons.

. Also, the conclusion of the Board that the Labor Union had not been guilty of an unfair labor practice in demanding a full complement of musicians for theatricals booked by Gamble Enterprises at its theatre in Akron, Ohio, which had been reversed by the U. S. Court of Appeals, Sixth Circuit, was upheld by the Supreme Court of the United States. See National Labor Relations Board v. Gamble Enterprises, 345 U.S. 117, 73 S.Ct. 560, 97 L.Ed. 864.
As the labor practice complained of in the instant case is the same as that found not to be violative of the TaftHartley Act in the Gamble Enterprise case, it is apparent that the Regional Director was obliged to reject the charges made by plaintiff when it applied to the N. L. R. B. for relief.

. See, also, Los Angeles Turf Club, Inc. (1950) 90 N.L.R.B. 20; Hialeah Race Course, (1959) 125 N.L.R.B. 388 and Jeferson Downs, Inc. (1959) 125 N.L.R.B. 386.

. Counsel for plaintiff say that the sole dispute between the parties resulted from the “featherbedding” demands of the defendant Local which have a monopolistic purpose and effect in that plaintiff must either accede by employing unneeded and unwanted musicians, or he put out of business as it cannot obtain road shows or musical productions without union labor.
However, this unfortunate result does not give rise to a legal cause of action as it emanates solely from the demands of a lawful combination of working men who have, through their organized efforts, gained control of the labor market in the field of music. In the absence of an applicable anti-monopoly statute, such demands, .even, if they be regarded as unreasonable, are not contrary to Louisiana law; in fact, the public policy of Louisiana expressly protects most of the activities of labor organizations. See R.S. 23:821 et seq., commonly called the “Little Norris-LaGuardia Act”. In R.S. 23:-822, the public policy of the State has been declared to be that, since governmental authority has permitted and encouraged employers to organize in the corporate and other forms of capital control, “ * * * it is necessary that the individual workman have full freedom of association * * * to negotiate the terms and conditions of his employment, and that he shall be free from the interference * * * of employers of labor * * * in other concerted activities for the purpose of collective bargaining or other mutual aid or protection.”
In view of this announced policy, counsel’s arguments as to the practice of “featherbedding” should be addressed to the Legislature and not to the courts, for it is our function to interpret and apply the law as written and not to make it. .