TATE, Judge.
This is a suit to enjoin peaceful picketing.
It is conceded that the state courts always have jurisdiction to prohibit violent picketing. However, as to peaceful picketing the threshold issue is whether jurisdiction over the labor dispute in question has been preempted by the federal regulation of the field by the National Labor Relations Act,‘ 29 U.S.C.A. § 141 et seq. This issue is here determinative.
The plaintiff Evangeline Downs is the operator of a race track. It alleges that the defendant Local had established a picket line for the supposedly unlawful purpose of compelling Evangeline Downs to hire as employees some of the Local’s members. The defendant Local appeals from judgment granting Evangeline Downs a permanent injunction “forever” prohibiting the Local from picketing in the vicinity of the race track.
The Local contends, inter alia, that the trial court erred in overruling its exception to the state courts’ jurisdiction over the subject matter. We think this contention is well-founded.
The legal context of the jurisdiction issue is as follows:
Except as provided by 29 U.S.C.A. § 164(c), the state courts are without jurisdiction to enjoin peaceful picketing in labor disputes in industries affecting interstate commerce, because by the enactment of the National Labor Relations Act, 29 U.S.C.A. § 141 et seq., the national Congress has preempted this as an area of federal regulation by the National Labor Relations Board. Amalgamated Meat Cutters, etc., et al. v. Fairlawn Meats, Inc., 353 U.S. 20, 77 S.Ct. 604, 1 L.Ed.2d 613 (1957), San Diego Bldg. Trades Council v. Garmon, 353 U.S. 26, 77 S.Ct. 607, 1 L.Ed.2d 618 (1957), Garner v. Teamsters, Chauffeurs & Helpers Local Union No. 776 (AFL), 346 U.S. 485, 74 S.Ct. 161, 98 L.Ed. 228 (1953). See, e. g., Hattiesburg Building and Trades Council v. Broome, 377 U.S. 126, 84 S.Ct. 1156, 12 L.Ed.2d 172 (1964).
The exception provided by the cited Section 164(c) is that “in its discretion” the National Labor Relations Board may decline to assert jurisdiction where, “in the opinion of the Board, the effect of such labor dispute on commerce is not sufficiently substantial to warrant the exercise of its jurisdiction”; and the state courts may then assert jurisdiction in labor disputes over which the Board has declined jurisdiction.[1]
Relying upon Subsection c as authority, the Board has in at least three cases declined to assert jurisdiction in representation cases involving the racing industry. Walter A. Kelley (Teamsters Local 917), 139 NLRB No. 56, 51 LRRM 1375 (1962); Hialeach Race Course, Inc., 125 NLRB 388 (1959); Jefferson Downs, Inc., 125 NLRB 386 (1959). Also, in two pre-Sub-section c instances the Board declined to *360 exercise its jurisdiction in matters relating to race tracks. Los Angeles Turf Club, Inc., 90 NLRB 20 (1950); also Pinkerton’s National Detective Agency, Inc., 114 NLRB 1363 (1955).
The rationale was that the enterprises in question, although relating to interstate commerce, did not affect interstate commerce so substantially as to require federal regulation. With state regulation (licensing, etc.), the Board felt that its resources could be better devoted to industries where labor disputes were likely to have a more substantial impact on commerce.[2]
However, the Board itself has noted that its declination of jurisdiction is not irrevocable. See Walter A. Kelley opinion, cited and quoted in Footnote 2. Nor has the Board ever adopted any formal rule declining generally to assert jurisdiction in race-track cases.
When the next race-track dispute is presented to it, the Board is free to retain its pre-emptive jurisdiction. Further, although effectuation of the federal preemptive regulation of labor matters may not require the Board to assert its jurisdiction in race-track representation matters, a state’s blanket prohibition of peaceful picketing might well involve different considerations . in the Board’s determination in a particular case whether or not to relinquish its pre-emptive jurisdiction granted in the interest of national uniformity.
It is for such reasons that the Louisiana courts refuse to assume that the Board will decline to exercise its pre-emptive jurisdiction in a given labor dispute, in the absence of some affirmative action by the Board declining jurisdiction as to that particular dispute.
This attitude was forcefully stated in Barksdale and LeBlanc v. Local No. 130, Int. Bro. of E. W., La.App. 1 Cir., 143 So. 2d 770, 774. There, the court said, “Thus, from the language therein used [29 U.S. C.A. § 164(c) (1) and (2)] it appears to be premature and the state court is without jurisdiction to act on an instance such as is involved herein unless a declination of jurisdiction had previously been made by the Board. We would only resort to surmise to conclude what action the Board may have taken had charges been filed with the Board. However, it is not for us to resort to conjecture as to the action the Board would have taken, but until jurisdiction had affirmatively been declined by the Board, we are of the opinion the state court was without jurisdiction.”
Similarly, in DeRouen v. Lard, La.App. 1 Cir., 121 So.2d 311, 314, the court stated “ * * * it is only in those cases which have been presented to the Board and the Board has declined to exercise its jurisdiction that the court can then exercise jurisdiction.”
Evangeline Downs contends, however, that these intermediate court decisions are not controlling because of a contrary holding by our state Supreme Court in New Orleans Opera Guild v. Local 174, Musicians M.P.U., 242 La. 134, 134 So.2d 901. Evangeline Downs particularly relies upon *361 the Supreme Court’s statement overruling an exception to jurisdiction over the subject matter, 134 So.2d 906: “Thus, it is seen that the question of Federal preemption of jurisdiction in matters like this in inconclusive and uncertain. Since the N.L.R.B. has, in a majority of cases, declined jurisdiction of labor disputes involving theatrical and musical entertainment, we do not think that the Court of Appeal erred in holding that our courts have jurisdiction of this controversy.”
The Supreme Court’s statement must be viewed in the light of the issue in Opera Guild. The question there was whether the employer was engaged in interstate commerce so as to be within the basic preemptive jurisdiction of the National Labor Relations Board. The employer had vainly sought relief first from the Board before turning to the state courts.
We do not believe the Opera Guild holding applicable to the present instance. Unlike Opera Guild, the basic pre-emptive jurisdiction of the Board is not in question here and thus does not require in limine resolution. The present labor dispute plainly involves an employer engaged in interstate employment and business activities. Furthermore, the present employer had not first sought and been refused relief by the Board. (The difference in the issues is inferentially indicated in that Opera Guild did not refer to nor overrule the earlier intermediate court decision in De-Rouen, nor was Opera Guild cited by the subsequent intermediate court decision in Barksdale & LeBlanc.)
_ We hold, therefore, that, where a labor dispute falls within the basic preemptive jurisdiction of the National Labor Relations Act, the Louisiana courts will not assume jurisdiction over it upon the supposition that the Board will in its discretion decline to exercise jurisdiction as authorized by Subsection c. Until the Board has declined to assert its basic pré-émptíve'-jurisdiction in the particular dispute in ques-tion, the state court does not have jurisdiction of the subject matter.[3] See Russell v. Electrical Workers Local 569, 64 Cal.2d —, 48 Cal.Rptr. 702, 409 P.2d 926 (1966) for summary of opposing decisions and divided scholarly opinion as to the question.
Having reached this conclusion, it is unnecessary for us to decide the forceful additional contention of the Local that the Board’s jurisdiction plainly pre-empts because of the arguable effect of the picketing upon the construction workers of secondary employers admittedly engaged in interstate commerce. Hattiesburg Building and Trades Council v. Broome, 377 U.S. 126, 84 S.Ct. 1156 (1964) ; Local No. 438 Construction and General Laborers Union, AFL-CIO v. Curry, 371 U.S. 542, 83 S.Ct. 531, 9 L.Ed.2d 514 (1963).
Since the state courts lack legal power and authority to determine labor disputes within the pre-empting jurisdiction of the National Labor Relations Board, we must sustain the Local’s exception to the jurisdiction over the subject matter. LSA-CCP Arts. 2, 3.

Motion to Dismiss Appeal.

Following oral argument, the appellee Evangeline Downs filed a motion to dismiss the appeal as moot. Relied upon is an affidavit that construction work by outside contractors has been completed and that the race-track had closed for the current season on September 24th.
The motion to dismiss is without merit. The final judgment of permanent injunction “forever” prohibited the defendant Local from picketing Evangeline Downs’s premises, not only during the current racing season or during construction activities. If the appeal is dismissed, the injunction is maintained, permanently restricting the Local’s future activities at the track
*362 As stated at 1 C.J.S. Actions § 17 c: “ * =1= * a moot case is a case which seeks to get a * * * judgment on some matter which, when rendered, cannot, for any reason, have any practical legal effect upon a then existing controversy * * See Hines v. Village of Goldonna, La.App. 3 Cir., 136 So.2d 140. Thus, where an injunction can no longer have legal effect, the court may upon appeal dismiss the suit as moot. Daigle v. Pan American Production Co., 236 La. 578, 108 So.2d 516. This is not the situation before us.
The case is not moot. The motion to dismiss the appeal is overruled.

Decree.

For the foregoing reasons, we sustain the defendant’s exception to the state courts’ jurisdiction over the subject matter. Accordingly, the trial court judgment granting an injunction is set aside, and the plaintiff’s suit is dismissed. All costs are to be paid by the plaintiff-appellee.
Exception sustained; suit dismissed.
On Application for Rehearing’.
En Banc. Rehearing denied.

. The text in full of Subsection c, which was added in 1959 (see DeRouen v. Lard, La.App. 1 Cir., 121 So.2d 311, 1960, for legislative purpose), is as follows, 29 U.S.C.A. § 164:
“(c) (1) The Board, in its discretion, may, by rule of decision or by published rules adopted pursuant to the Administrative Procedure Act, decline to assert jurisdiction over any labor dispute involving any class or category of employers, where, in the opinion of the Board, the effect of such labor dispute on commerce is not sufficiently substantial to warrant the exercise of its jurisdiction: Provided, That the Board shall not decline to assert jurisdiction over any labor dispute over which it would assert jurisdiction under the standards prevailing upon August 1, 1959.
“ (2) Nothing in this subchapter shall be deemed to prevent or bar any agency or the courts of any State or Territory (including the Commonwealth of Puerto Rico, Guam, and the Virgin Islands), from assuming and asserting jurisdiction over labor disputes over which the Board declines, pursuant to paragraph (1) of this subsection, to assert jurisdiction.”

. In its last expression on the subject, Walter A. Kelley (Teamsters Local 917), 139 NLRB No. 56, 1962 OOH NLRB Case No. 11,737, the Board observed in the concluding paragraph of its opinion: “The fact that the employees involved move across state lines is not alone sufficient to justify the Board in asserting jurisdiction. It still remains true, in our opinion, that a labor dispute in this industry is not likely to have very serious repercussions on interstate commerce, and it is this latter factor which is determinative of a decision whether to assert jurisdiction. Moreover, the employees involved are already licensed and regulated by every state in which they work. To subject other aspects of their relationship to possible multistate regulation would therefore be merely to follow a pattern which already exists and to which the employers presumably have accommodated themselves. Finally, the Board’s declination of jurisdiction is not irrevocable. If the Board’s expectations are not realized, it mill not hesitate to reconsider its policy in this area.”

. We have been informed by brief that, to facilitate prompt determination, the Board’s rules now provide for advisory opinions upon request on jurisdictional questions. 39 CFR Sections 101.39-101.-43, 102.9S-102.110.