**57 So.2d 206**

**CITY OF ALEXANDRIA v. LA COMBE.**

**CITY OF ALEXANDRIA v. ORY.**

**CITY OF ALEXANDRIA v. REXER.**

**CITY OF ALEXANDRIA v. CLARK.**

Nos. 40541–40544.

Jan. 14, 1952.

Gravel & Downs, Alexandria, for appellants.

Frank H. Peterman, City Atty., B. Newton Hargis, Asst. City Atty., Alexandria, for appellee.

LE BLANC, Justice.

These four cases were consolidated on appeal as they involve the same issue and arose out of the same factual situation. Each defendant was convicted in the City Court of Alexandria on July 7, 1951, of violating one of the provisions of the gambling ordinance which had been adopted by the City Council of that City, and sentenced to pay a fine of $10 or serve ten days in jail. A motion to quash the affidavit on the basis of the alleged illegality, invalidity and unconstitutionality of the ordinance for the violation of which they were being charged had been over-ruled and upon their conviction after trial, they each took an appeal to this court.

From brief of counsel for the City of Alexandria we learn that the facts leading to the charges preferred against the defendants are as follows: They were engaged in playing in a game of cards in which they were betting and playing for money; the game was being played in a saloon which was owned by one of the players but it was not then open for business as it was five o'clock in the morning; money and cards were found on the table when the police intervened. The defendants admitted they were playing cards for money, but said it was a "friendly" game.

The ordinance relating to gambling which was adopted February 5, 1951, is quite lengthy and attempts to define gambling in several aspects but in view of the specific charge that is made in each of these cases it is necessary to quote only those parts and provisions which are pertinent. They are the following:

"Section 1. Be It Ordained By The City Council Of The City Of Alexandria, Louisiana, in legal session convened that gambling as hereinafter defined is declared to be a misdemeanor and is prohibited within the corporate limits of the City of Alexandria.

"Section 2. Be It Further Ordained, Etc., that gambling is defined to consist of any one of the following acts:

* * * * * *

"(c) The intentional betting, wagering or risking the loss of anything of value in order to realize a profit of any game conducted with cards, dice, dominoes, or other contrivance, without reference as to how the same shall be conducted or operated.

"Section 8. Be It Further Ordained, Etc., that anyone who violates the provisions of this ordinance shall be fined not more than $100.00 or imprisoned not more than 30 days or both fined and imprisoned in the discretion of the Court."

In order to get to the precise issue that is presented we think it proper to quote the latest State statute on the subject of gambling. It is now incorporated in the Revised Statutes of 1950 as part of the Criminal Code, LSA–R.S. 14:90, the source being Act No. 43 of 1942, and reads as follows:

"Gambling is the intentional conducting, or directly assisting in the conducting, as a business, of any game, contest, lottery, or contrivance whereby a person risks the loss of anything of value in order to realize a profit.

"Whoever commits the crime of gambling shall be fined not more than five hundred dollars, or imprisoned for not more than one year, or both."

The defendants' contention on which their plea of illegality of that provision of the City ordinance which they are charged as having violated is based, arises out of that part of the definition which does not restrict gambling in any way in reference to the manner in which it is conducted whereas under the State law it is restricted in its definition to gambling that is conducted *as a business*. The municipality, City of Alexandria, it is urged, did not have the power to extend or enlarge the definition contained in the State statute.

We believe it is important, in considering the issue, to look a bit into the history of the legislation and jurisprudence of this State on the question of the right of municipalities to enact ordinances against gambling.

Counsel on both sides agree that such power as the municipality possesses, is derived from the Legislature. That undoubtedly must be so, as far as gambling is concerned for Section 8 of Article 19 of the Constitution of 1921 specifically declares gambling to be a vice and ordains the Legislature to suppress it. Similar provisions were contained in the Constitution of 1898 and previous constitutions. Acting under such special mandates the Legislature did enact laws relating to gambling but the first general grant of such power by the Legislature to a municipality is found in Act No. 136 of 1898 known as the "Lawrason Act" which is now embodied in LSA–R.S. 33:401. That Act was a very comprehensive one containing provisions under which municipalities could be incorporated. All of their powers, authorities, restrictions, etc., are fully defined and among those powers is the one: "To prohibit and suppress * * * games and gambling houses and rooms * * * and to provide for the punishment of the persons engaged therein. * * *"

It is to be noted that the authority given to the municipality was to prohibit gambling but no definition of the word "gambling" is contained in the Act. Indeed, it appears that no previous Legislative act had laid down any definition of the word but apparently this Court was of the opinion that the mandate given to

the Legislature by the Constitution to suppress gambling had not precluded the Legislature from empowering municipalities organized under the provisions of the Act of 1898 from enacting Ordinances for its suppression. See Town of Ruston v. Perkins, 114 La. 851, 38 So. 583.

Subsequently, in the case of the City of Lake Charles v. Marcantel, 125 La. 170, 51 So. 106, the Court for the first time, apparently, considered the question of whether it was necessary to define the word "gambling" in municipal ordinances enacted by municipalities incorporated under the Act of 1898, and it was therein held that in view of the well understood legal as well as the popular meaning of the word, no definition was necessary.

In 1920, however, the Legislature concluded that with regard to certain municipalities, that is those having a population of more than 5,000 and less than 100,000 inhabitants, there should be a special grant of power to the municipality to enact ordinances relating to gambling for we find that by Act No. 125 of that year such authority was granted and, for the first time, in connection with the authority to pass laws prohibiting gambling, municipalities coming within its provisions were authorized "to define what shall constitute gambling". The City of Alexandria is a municipality having a population of more than 5,000 and less than 100,000 inhabitants and, so far as the subject matter of the act was concerned, came within its purview.

The next Legislative pronouncement on the subject appears in Act No. 43 of 1942 which became Sec. 90 of the Criminal Code and in which for the first time the Legislature itself specifically defined the word "gambling". The Criminal Code was incorporated as a body in the Revised Statutes of 1950 and Section 90 is now LSA–R.S. 14:90 as indicated at the beginning of this opinion where its provisions were quoted in full.

In the Revised Statutes is also incorporated the section which replaced Act No. 125 of 1920. It is placed under Title 33 on Municipalities and Parishes and is found in Chapter 14 of that Title which deals with the Exercise of Police Power. It has become LSA–R.S. 33:4851 and reads in its entirety as follows:

"Municipalities having a population of more than five thousand and less than one hundred thousand inhabitants may pass ordinances prohibiting gambling and provide penalties for the violation of any ordinances passed under this authority."

Thus it is seen that the power to define gambling in ordinances passed under the authority of that Act was withheld and we are left, therefore, with the only definition of the word "gambling" as it is found in LSA–R.S. 14:90 and which contains the requirement that the conducting of gambling must be *as a business,* in order for it to become a misdemeanor or a crime. It is clear, therefore, that the only manner in which a municipality has the power to

define gambling is as thus restricted for, as we have shown, it only derives its authority to enact ordinances relating to gambling from the Legislature itself. Certainly, in our opinion, a municipality has not the right to extend or enlarge upon the definition adopted by the Legislature and enact a law defining gambling as the intentional betting of anything of value at a card game "without reference as to how the same shall be conducted or operated."

 Counsel for the City of Alexandria contend that if LSA–R.S. 33:4851 which omitted from its provisions the granting of power to the municipality to define gambling varies from its source, Act No. 125 of 1920, that such change was unauthorized and on this point they argue that the Louisiana State Law Institute which compiled the Revised Statutes which were adopted in 1950 exceeded its authority as under Act No. 43 of 1942, the statute under which it was authorized to make the revision, it could not change any existing law. Whilst it is true that the Law Institute had no power whatever to change any law it is also true that when it made its report to the Legislature in 1950 and recommended the adoption of the Revised Statutes as projected by it, and the Legislature itself adopted the statutes as a body and enacted them into law there is no doubt that as so adopted and enacted they became the law of the State as it presently exists. With regard to Act No. 125 of 1920 and LSA–R.S. 33:4851 this is doubly

so because in Section 2 of Act No. 2 of the Extraordinary Session of 1950, there is contained a repealing clause by which certain statutes, including all amendments and re-enactments thereof, are repealed and in the list of statutes thus specifically repealed is Act No. 125 of 1920. Its repeal undoubtedly left LSA–R.S. 33:4851 as the only remaining law on the subject.

 It is also urged that there is nothing to prevent both the State and a municipal corporation from having concurrent jurisdiction over the same subject matter and that a municipality may supplement a statute or cover any part of an authorized field of local legislation that is not covered by State legislation. As authority for such a proposition we are referred to 62 C.J.S., Municipal Corporations, § 143 and certain decisions of this Court. None of the cited cases bear any pertinency to the direct issue that is presently before the Court. We experience no trouble in agreeing with the proposition advanced by counsel but it is noted that the section cited from 62 C.J.S. deals with municipal regulations under state enactments and even with regard to regulations it is noted that the power which the municipality has to join with the State in exercising jurisdiction over the same subject matter and make its own regulations relating thereto exists only in so far as the two sets of regulations are not in conflict with each other. It is stated in the section that "ordinarily, in order that there be a conflict between a state enactment and

a municipal regulation, both must contain either express or implied conditions which are inconsistent and irreconcilable with each other." In this case it can hardly be said that there is no conflict between a State law which defines gambling and specifically provides that in order for it to be a crime it must be conducted *as a business* and a municipal *ordinance* which attempts to define it and specifically provides in one of its sections that it can be a misdemeanor *without reference as to how the same shall be conducted or operated.* The two provisions cannot, in our opinion, be possibly reconciled.

We conclude that when the Legislature in its latest enactment removed from a municipality the power which it had previously given to it to define gambling and itself passed a law specifically defining it, it intended to occupy the whole field of legislation on the subject and merely left the municipality with concurrent power to suppress it in the manner as defined by that law.

■ We hold therefore that Section 2(c) of Penal Ordinance No. 533 of the City Council of the City of Alexandria, adopted February 5, 1951, is illegal and invalid and accordingly the defendants were illegally and unlawfully prosecuted under the affidavits charging them with its violation. The motion to quash, in each case, should have been sustained.

A separate decree will have to be entered in each case the one which follows to serve in the case No. 40,541, City of Alexandria v. John LaCombe:

For the reasons stated, it is ordered that the conviction and sentence in the case of City of Alexandria v. John LaCombe, No. 40,541 of the docket of this Court be and the same is hereby reversed, set aside and annulled and it is further ordered that the accused, the said John LaCombe be discharged and released from custody.