GLADNEY, Judge.
The Police Jury of Caddo Parish called an election in that portion of Ward Four, Caddo Parish, outside of the' City of Shreveport, to determine local option therein. The election was held on August 5, 1952, and the results thereof promulgated by the police jury indicate that on all issues voted upon the proponents of prohibition were successful. Thereupon the police jury passed a penal ordinance to carry into effect the election.
Plaintiffs allege they are qualified electors of that portion of Ward Four exclusive of the City of Shreveport, and are therein engaged in the retail business of selling beverages of alcoholic content.' One of the plaintiffs, Milton C. Crawford, is the owner of a $1,000 World War II soldier’s bonus bond. They seek to enjoin the parish police jury, registrar of voters, district attorney and sheriff from enforcing in the unincorporated portion of Ward Four of Caddo Parish, the results of the local option election and to[1] have declared null and of no effect the local option election upon various grounds set forth in the petition. It is also specially pleaded that the local option statute and the ordinance passed to give effect to the election, are unconstitutional, as being repugnant to Section 10 of Article 18 and Section 15 of Article 4 of the Constitution of Louisiana, and Section 10 of Article 1 of the Constitution of the United States.
Upon filing of the petition a rule nisi for a writ of preliminary injunction issued in accordance with the prayer of plaintiffs’ petition. On the return date defendants appeared to file an exception of no cause and no right of action, and, subject to the exception, an answer to the rule. . The court heard and sustained the exception, dismissed plaintiffs’ suit and denied a writ of preliminary injunction without a hearing on the rule. Plaintiffs then applied to the trial court for orders of suspensive and devolutive appeal returnable to this court. The orders were granted only for the devolutive appeal. In their search for relief applications were made by plaintiffs to the Supreme Court for the exercise of its supervisory powers by granting writs and a stay order to prevent the enforcement of the penal ordinance until the issue of the validity of the election be determined. The Supreme Court denied such relief. After argument and submission of the appeal to this court the plaintiffs asked the issuance of orders to stay the enforcement of the penal ordinance but we were of the opinion we were without jurisdiction and refused the order.
The only issue before this court is whether or not the judgment appealed from sustaining the exception of no cause and no right of action was correctly decided.
As we understand the issue herein raised, plaintiffs assert certain preliminaries and conditions precedent to the election were fatally defective, but they have raised no *155 contention that the election, particularly as to its conduction and the promulgation thereof, were in any measure irregular.
The first attack, made in the petition is that the election and the ordinance enacted pursuant thereto are illegal as violative of LSA-R.S. 26:581-595, the state statute providing for local option. The petition states:
“The Police Jury had the authority under said Title 26 of LSA-R.S. to call a local option election for any entire ward. It did not have authority to call a local option election for a portion only of a ward. It did call the instant election for a portion only of Ward 4, to-wit: that portion of Ward 4 outside the City of Shreveport.
******
“None of the four petitions, Exhibit ‘S’, taken individually or as a whole, purport to contain 25% of the qualified electors of Ward 4, as required by LSA-R.S. 26:582. Nor do they contain 25% of the registered voters of Ward 4.
“None of the 4 certificates of the Registrar, Exhibit ‘B’ taken individually or as a whole, purport to show that any one, or all taken together, of the 4 petitions, Exhibit ‘B’, contain 25% of the qualified electors of Ward 4, as required by LSA-R.S. 26:585, nor do they so contain.”
Briefly stated the contention is that the police jury is without authority and is not permitted to call a local option election for a portion only of a ward.
 The issue confronting us can be answered only by proper interpretation and construction of the several statutory provisions prescribing the preliminary requirements for holding local option elections. It must be conceded at the outset that parishes and municipalities are creatures of the state. They possess no police power except as delegated by the state legislature or as may be expressed in the state constitution. It, therefore, must be accepted as true that in the calling of local option elections neither the police jury nor the governing officials of a municipality may exercise any power beyond that specifically delegated to it by the local option statute LSA-R.S. 26 :- 581 et seq. In discussing the delegation of power the Supreme Court in State v. Jordan, 1944, 207 La. 78, 20 So.2d 543-545, said:
“Parishes and municipal corporations of this state are vested with no powers, and possess no authority, except such as are conferred upon, or delegated to, them by the Constitution and statutes. * * * It is conceded that, if the parishes and municipalities of this state have such delegated authority, it must be found in Act 17 of the First Extra Session of 1935, which act is commonly referred to as the ‘Local Option Law’ of this state.”
In judicial interpretation of a statute, legislative intent must be sought and in so doing we must construe statutory provisions as they are written, giving to the entire context a reasonable meaning. •
In Levy v. New Orleans & Northeastern Railroad Company, La.App.1945, 20 So. 2d 559-562, Judge Janvier expressed the rule as follows:
“In a Texas case, Patillo v. State, 120 Tex.Cr.R. 568, 47 S.W.2d 847, 848, the court considered whether a statute which referring to ‘a train or street car or interurban car’, Vernon’s Ann. P.C. art. 1659, subd. 4, should be held to apply to motor busses not operated on rails.. It was held that the statute did not apply. The court made a statement which we think pertinent here: ‘When courts, in construing statutes, depart from the language employed by the legislator, they incur the risk of mistaking the legislative will, or declaring it to exist where, in truth, it never had an expression. The legitimate function of courts is to interpret the legislative will, not to supplement it, or to supply it.’
“It would be a dangerous practice indeed for courts to attempt to decide that an ordinance or a statute which by its express wording is limited to a certain thing or subject should be extended *156 to others which, though possibly similar, are not included within the express terms of the statute or ordinance. If there is a necessity that such enactments be amended so as to bring them abreast of modern transportation development the amendments should come from the municipal authorities or the state legislators. ' They cannot come from the courts.”
We, therefore, conceive it our duty in the interpretation of the statute before us to give it a reasonable interpretation, bearing in mind that parishes and cities have only the power to call an election for the purpose of determining local option in the manner granted and subject to the restrictions of the statute delegating such authority to them. Also, we believe that a review of prior statutes and court decisions can be helpful in disclosing the proper construction to be placed upon the instant statute.
Previous to the enactment of LSA-R.S. 26:581-595, a local option statute has been in effect in this state at least since 1870. This is reflected in LSA-R.S. 1870, § 1211, Acts of 1902, No. 221, Acts of 1935, First 'Extra Session, No. 17, and Acts of .1948, No. 372. The latter act was superceded by LSA-R.S. 26:581-595. City of Alexandria v. La Combe, 1952, 220 La. 618, 57 So.2d 206, 209.
Act No. 17 of the First Extra Session of 1935 provided whenever an election Had been held and the majority of the votes cast in a parish or in a ward, election, if only a ward election .has been held, should be against the sale of alcoholic beverages in excess of six per cent (6%) in volume within such parish or ward, the vote thereon in a parish or ward election would control and affect the governmental subdivision within the parish or ward respectively. The same act and section provides that on the question of whether or not liquors of an alcoholic content of more than one and one-half per centum and not exceeding six (6%) per cent of volume should be sold, a majority of the electors of a municipality voting in a parish-wide, ward, or strictly municipal election, would determine that the business voted upon may be conducted in such municipality, such business could be conducted therein until a majority of the electors of the municipality voting at a subsequent election should determine to the contrary. For this reason it was provided . that separate ballot boxes should be had for the ballots of electors residing in the municipality or separate precincts established in the municipality, and in either case separate polls and tallies were required of the vote in the municipality in order that the promulgation of the returns would show the result of the vote in such municipality. In other words, it was expressly provided that any incorporated municipality would have the right to determine independently of the total parish or ward vote whether they should permit the sale of alcoholic liquors of low alcoholic content, but in the case of liquor of high alcoholic content the corporation was bound by the parish or ward election.
On March 25, 1813, following the admission of Louisiana as a state into the Union, an act was passed dividing the parishes into wards for the election of police jury members. In this respect the subdivisions of a parish differed from the divisions into townships dr districts as was done in common-law jurisdictions. Caddo Parish ■ was created from Natchi-toches Parish by Acts 1838, 2nd Sess. No. 15. This system of subdivision into wards has been consistently respected unto the present time. A ward constitutes a distinct subdivision of the parish. It was so created as an election district from which its qualified electors were enabled to select its representatives on the police jury and school board and for determining other local questions. The'ward is not only a police jury ward, it is also a justice of the peace ward, or at least that is the case until the office of justice of the peace is abolished by the Legislature. Article VII, section 46 of La.Const. of 1921. The ward, therefore, seems to be the only political subdivision of the parish, excepting, of course, incorporated municipalities therein.
In local option laws prior to the enactment of Act No. 372 of 1948, the only subdivisions' recognized for purposes of such *157 elections within a parish were wards and incorporated municipalities.
We may concede in this discussion that the Legislature can designate a portion of a ward as an election district and such a legislative enactment can be feasible, as was demonstrated in the instant election. But we are of the opinion that unless this is clearly indicated in the instant statute we would feel justified in concluding the subdivisions referred to therein are the same as those recognized in all local option elections prior to Act No. 372 of 1948.
Unquestionably it is permissible under the statute to have a ward election in which all incorporated municipalities in the ward can participate. Under Act No. 17 of the First Extra Session of 1935, the method of calling such an election is illustrated in State v. Garrett, 1950, 218 La. 538, 50 So.2d 24, 26:
“Our careful study of the record convinces us that the question of the sale of alcoholic beverages of over six per cent alcoholic content was determined by Ward Three of Washington Parish as a whole, just as counsel insists should have been done. True, because of the existence of the municipality within the Ward, the propositions necessarily were submitted separately and the ballots counted separately; nevertheless, it appears that the Police Jury when 1 canvassing the returns took into consideration and declared the result of the election-not only for the Town of Franklinton but also for the entire Ward Three, including such municipality. Thus the Police Jury minutes respecting the canvass recite that on the question of permitting the sale in the Third Ward of Washington Parish of intoxicating liquors containing more than six per cent of alcohol by volume the vote in the Town of Franklinton was 66 for and 249 against and the vote in Ward Three as a whole including the Town of Franklinton’ was 141 for and 385 against. We conclude, therefore, that the election was held in accordance with the provisions of Act No. 17 of 1935, First Extra Session.”
Act No. 372 was expressly repealed in the repealing clause of the Act enacting the Revised Statutes of 1950 and by such repeal LSA-R.S. 26:5821-595 was left as the only remaining law on the subject of local option. But in order to find legislative intent we certainly may look to the source of the act for guidance. For this purpose only we refer to the title of the repealed act for enlightenment as to its objects and purposes. From the title we quote only those portions of the title which appear relevant to the section of the LSA-Revised Statutes under scrutiny.
“AN ACT
“To provide for separate referendum elections in wards and incorporated villages, towns and cities upon the petition of not less than twenty-five (25%) per cent of the duly qualified electors of said subdivisions to determine whether or not the business of manufacturing, producing, rectifying, blending, using, storing, distributing and selling intoxicating beverages shall be conducted and licensed therein ; to define the meaning of intoxicating beverages and beer; to provide separate propositions to be printed on the ballot to be used for the election; to instruct voters how to vote for or against each and all of the propositions; to provide for the determination of each proposition, permit each elector to vote on any or all of rthe propositions and to provide the effect of the majority vote on each proposition to be binding separately on the ward or incorporated village, town or city; * * * to provide form of petitions; manner of signing and filing petitions with Registrar of Voters as public record; and manner of verification and publication of petition by Registrar of Voters with governing authority charged with duty of ordering the election * *
A casual reading of the entire title of Act No. 372 brings forth not one single reference to an unincorporated balance or portion of a ward. Certainly, the legal subdivisions mentioned therein are ward, *158 city, town and village. The last three were grouped under the words “incorporated municipality” when' the Act was brought into the LSA-Revised-Statutes of- 1950.
With this background of prior statutes and' court interpretation in mind, we turn to the following pertinent provisions of the LSA-Revised Statutes:
LSA-R.S. 26:582:
.. “Upon, petition of not less than twenty-five per cent of the qualified electors .residing in any ward, or, any incorporated municipality the governing authority shall order a referendum election to be held to determine whether or not the business of * * * selling alcoholic beverages, shall be conducted and licensed therein.
“This election shall be separately called and held, and the result separately binding for each incorporated municipality, and for the unincorporated balance of the ward. No such election shall be held on a parish-wide basis or for any subdivision other than the ones above mentioned.
“No such election shall be held for the same subdivision oftener than once in every two years.”
LSA-R.S. 26:583:
“Any qualified elector desiring a ■ referendum election, shall sign a petition addressed to the governing authority of the subdivision in which he resides, and in substantially the following form:
■ ' “PETITION
“TO:
“The undersigned qualified electors respectfully request that you call an election to submit, in the manner pro- . vided by law, to the qualified electors of Ward-of-Parish, or of the city, town or village of -, the following three propositions :
“(1) Shall the sale of beverages of low alcoholic content containing more than three and two-tenths per cent alcohol by weight and not more than six per ..cent alcohol by 'volume be permitted? .
“(2) Shall the sale of beverages of high alcoholic content containing more than six per cent alcohol by volume for consumption :on the premises be , permitted?
“(3) Shall the sale of beverages of high alcoholic content containing more than six per cent alcohol by volume be permitted by package only and not for consumption on the premises? sjc ifc ‡ »
LSA-R.S. 26:584:
“The multiple petitions for each ward or portion thereof or for each incorporated municipality shall be bound together as one petition and shall be filed at one time with the Registrar of Voters within sixty days from the date the first signature was affixed. * * * ”
LSA-R.S. 26:585:
“The Registrar of Voters shall check the petition an.d attach thereto his sworn verification showing:
* * * * * *
“(4) The number of qualified electors of the ward or of the municipal ity, as the case may be, on the registration rolls as of the date of the filing of the petition, which date shall be used by him in ascertaining if the petition contains the required number of signatures * * *.”
LSA-R.S. 26:587: "
* - * * ' * * *
“A majority vote cast ón each proposition shall separately determine that issue for the ward, or for the'incorporated municipality. When a ward contains an incorporated municipality, the issue shall be separately determined for the municipality and for the unincorporated balance of the ward.”
LSA :R.S. 26:590:
“If the petition fails to substantially comply with the requirements provided in this Chapter or if the other requirements specified in this Chapter *159 for the calling or conduct of the election are not substantially complied with, the election is illegal and ineffective and may be declared null and void by any court of ¡competent jurisdiction at the suit of any elector who was qualified to vote in the election. This suit shall be brought within thirty (30) days of the promulgation -of the results of the election.”
It is evident Section 582 in plain language provides for separate referendum elections in wards and incorporated municipalities, upon the petition of not less than twenty-five (25%) per cent of. the duly qualified electors of said subdivisions, to determine whether or not the business of selling, etc., intoxicating beverages shall be conducted and licensed therein. This is the first paragraph of the Act. No mention is made of providing for an election except in wards and incorporated municipalities.
The second paragraph provides that the effect of the majority vote on each proposition shall be separately binding for each municipality and the unincorporated balance of the ward.
. If the election held in a ward is separately binding on the electors of an incorporated municipality' voting in a ward election the only other electors in the same ward who could be separately bound are those in the remainder of the ward. The point is illustrated in State v. Garrett, supra. To the end that a ward election can be separately determined the election must be separately ¡called and held for the ward and any incorporated municipality therein. This imposes separate preliminaries, ballot boxes and tallies for each of said subdivisions. Such practice is not inconsistent with the practice under local option statutes prior to Act No. 372 of 1948.
If it be objected that the residents of a ward residing outside of any incorporated municipality therein are unfairly bound by the ward vote, or such election would be controlled by the city therein, it must be remembered state statutes affect all the people of the state. The residents of a city within a ward can hardly be said to be-without interest in the ward vote even though governed by a different result in the. municipality.
Section 583 generally prescribes the form of petition for an election. The pattern for the petition shows it “is addressed to the governing authority of the subdivision wherein the elector[1] resides and sets forth the request to submit an election to the qualified electors of ward-of-Parish, and of the City, Town or Village of -, the following three propositions * * Manifestly, such petition must be addressed to the electors of the ward, except where only an incorporated municipality is involved. If it were intended that such petition should be directed only, to the electors of the unincorporated balance of the ward we think the statute would expressly say so. In the instant case all of the multiple petitions requested the calling of an election to submit “to the qualified electors of Ward Four of Caddo Parish but not of the incorporated-municipalities within the said ward, the following three propositions * *■ Unquestionably, the petitions were circulated only in a restricted portion of Ward Four and excluded that part of Ward Four embraced in the incorporated municipality within such ward.
Directions for binding and publication of the multiple petitions and for division of expense between the governing authorities-involved, are set forth in Section 584. We fail to observe any implications therein that can be said to be persuasive that a referendum election should be called for the-unincorporated balance of the ward separate from a ward election. In a ward election which includes an incorporated municipality when the city is obligated to- defray the expenses- of publication of the petitions-affecting it, the publication expense of the police jury can only be for the remaining multiple petitions — those for the unincorporated portion of the ward.
In Section 585 the registrar of voters is required to verify the petition or multiple *160 petitions and file the same with the governing authority. His -duties in respect to verification are seven in number. We note particularly that this section requires the registrar to check the petition and attach “his sworn verification showing;
* ■ * * * *
“(4) The number of qualified electors of the ward or of the municipality, as the case may be, on the registration rolls as of the date of the filing of the petition, which date shall be used by him in ascertaining if the petition contains the required number of signatures * *
Manifestly, the statutory provision does not contemplate that the registrar shall certify the number only of qualified electors in a portion of the ward.
The form of ballot is exactly set forth in Section 587 which section also provides the manner of voting. It is therein provided a majority vote cast on each proposition shall determine separately the issue for the ward or for the incorporated municipality. It further provides that when a ward contains an incorporated municipality, the issue shall be, separately determined for the municipality and for the unincorporated balance of the ward.' Obviously, in the latter situation the issue is separately determined for the unincorporated balance of the ward when the entire vote for the ward, including that of the municipality, is counted. The vote for the city is separately counted. See State v. Garrett, supra.
By way of summation we find that the statute only refers to the unincorporated balance or portion of the ward in Sections 582, 584 and 587. Sections 582 and 587 pertain only to the results of and binding effect of the ward vote. The reference to be found in Section 584 is apparently only pertinent for the purpose of a division of the advertising expenses between the governing authorities where a ward contains one or more incorporated municipalities. These provisions are insufficient, in our opinion, to indicate statutory intent to require a police jury to provide a separate election for the unincorporated balance of the ward. This conclusion is strengthened by Sections 582, 583, 585 and 587, which say the police jury shall call an election when petitions are received from twenty-five (25%) per cent of the electors of a ward or an incorporated municipality, and expressly declare no such election -shall be held for any subdivision except the ones mentioned, and which, in our opinion, refers to a ward or an incorporated .municipality. Furthermore, it is to be noted that the multiple petitions to be circulated, certified to and delivered by the registrar of voters to the police jury accord no consideration to a portion of the ward. We must also bear in mind that the registrar of voters in the verification of the signed petitions is required to certify the number of qualified electors of the ward or of the municipality, as the case may be. There is no expressed certification required as to a portion of the ward.
The foregoing considerations have persuaded us that plaintiffs have stated a cause of action by alleging the petitions were circulated only in a restricted portion of Ward Four; that the registrar certified the petitions not for an election in Ward Four, but for a portion thereof only; that the police jury called an election for only a portion of Ward Four, and that the election was held for a portion only of Ward Four.
We are mindful that the decision of the court a quo rested largely upon the opinion written in State ex rel. Harvey v. Police Jury in and for Jackson Parish, La. App., 1950, 49 So.2d 455, 456, wherein this court stated:
“Act [No.] 372 of 1948 provides that such an election shall be called upon, the petition of not less than twenty-five per cent of the qualified electors residing within the limits of a ward, incorporated municipality, or the unincorporated portion of any ward.”
A careful examination of the record in that case reveals the issue as to whether or not the electors of an unincorporated portion of the ward may require the police jury to call an election solely for that portion of the ward was not raised by ex- *161 ceptors in their exception or by counsel in brief. The issue could have been raised on consideration of the exceptions of no cause or right of action. It was not, in fact, brought to the attention of the court and apparently not considered or passed upon. The question has been clearly raised here and we prefer to adhere to the views expressed.
In view of our holding we do not find it necessary to pass upon the other issues raised in this case. For the reasons herein-above set forth the judgment appealed from is reversed, the exception of no cause or right of action is overruled, and the case remanded for further proceedings.

. Emphasis supplied by the court.