921 So.2d 51 (2006)
Claddie SAVAGE d/b/a Piney Woods Game Club and Ark-La-Tex Game Club, Inc.
v.
Steve PRATOR, Sheriff of Caddo Parish and the Caddo Parish Commission.
No. 2004-C-2904.
Supreme Court of Louisiana.
January 19, 2006.
Rehearing Denied March 10, 2006.
Charles Carr Grubb, Parish Attorney, Alex James Washington, Jr., Assistant Parish Attorney, for applicant.
Lunn, Irion, Salley, Carlisle & Gardner, Charles W. Salley, Richard B. King, Jr., Shreveport; Pettiette, Armand, Dunkelman, Woodley, Byrd & Cromwell, Edwin Henry Byrd, III, Shreveport, for respondent.
Jonathan R. Lovvorn, Don A. Rouzan, Mary Ellen Roy, New Orleans, for amicus curiae Humane Society of the United States.
JOHNSON, J.
This matter is before the Court on the issue of whether a Caddo Parish animal cruelty ordinance, which extends its protections to "fowl," contradicts the State animal cruelty statute, LA.REV.STAT. § 14:102.1, which exempts "fowl" from its applicable provisions. The trial court granted Plaintiffs' petition for a preliminary *52 injunction, finding that Caddo Parish Ordinance No. 2432, Section 4-14, conflicted with LA.REV.STAT. § 14:102.1, and thus, the ordinance improperly infringed upon the State's inherent police powers. The trial court made no ruling regarding the Plaintiffs' requests for a declaratory judgment and for a permanent injunction, but rather, those requests were deferred until a trial on the merits. The court of appeal affirmed the trial court's ruling. For the reasons that follow, we reverse the rulings of the lower courts, we vacate the preliminary injunction, and we remand the case to the trial court for further proceedings not inconsistent with this opinion.

FACTS AND PROCEDURAL HISTORY
Plaintiffs, Claddie Savage, d/b/a Piney Woods Game Club, and Ark-La-Tex Game Club, Inc. (hereinafter referred to as "Savage" and "Ark-La-Tex" respectively) filed a Petition for Declaratory Judgment and Injunctive Relief on January 12, 2004, after being informed by the Caddo Sheriff's Office that a pre-existing Parish ordinance prohibiting cockfighting would be enforced. The Caddo Parish Commission enacted Ordinance No. 2432, codified as Section 4-14, "Cruelty to Animals Prohibited," in 1987. Savage testified at the preliminary injunction hearing that he purchased Piney Woods Game Club in September 2003; however, Savage stated that cockfighting tournaments had been held on the property since approximately 1990. Allen Nix, president of the Ark-La-Tex Game Club, Inc., testified that Ark-La-Tex Game Club had been conducting similar tournaments (or "farm meets," which were described as "fights between the fowls") since 1997. Ark-La-Tex Game Club, Inc. usually conducted sixteen (16) meets between November and June/July.[1] At issue is Section 4-14(b), which provides:
No person shall beat, cruelly ill-treat, torment, overload, abandon, overwork or otherwise abuse an animal, or cause, instigate or permit any dog fight, bullfight, or other combat between animal or between animals and humans.
Under the definitions applicable to Ordinance No. 2432, the Parish defined "fowl" as an animal:

Animal shall mean any living vertebrate creature except human beings, including but not limited to mammals, birds, fowl, reptiles and fish....
Plaintiffs sought a judgment declaring Caddo Parish Ordinance No. 2432 "to be unconstitutional and as such unenforceable." In addition, Plaintiffs requested that the trial court issue a preliminary injunction enjoining Defendants "from any further threatened or actual enforcement of Caddo Parish Ordinance No. 2432." The trial court set a hearing on the Plaintiffs' request for preliminary injunction for February 2, 2004.
At the hearing for preliminary injunction, Plaintiffs alleged that Caddo Parish Ordinance No. 2432 is in contravention of the general law of Louisiana and that the ordinance is violative of the police power reserved to the State. LA.REV.STAT. § 14:102.1 is the state statute which criminalizes misdemeanor and felony cruelty to animals. LA.REV.STAT. § 14:102.1 provides:
*53 § 102.1. Cruelty to animals; simple and aggravated
A. (1) Any person who intentionally or with criminal negligence commits any of the following shall be guilty of simple cruelty to animals:
(a) Overdrives, overloads, drives when overloaded, or overworks a living animal.
(b) Torments, cruelly beats, or unjustifiably injures any living animal, whether belonging to himself or another.
(c) Having charge, custody, or possession of any animal, either as owner or otherwise, unjustifiably fails to provide it with proper food, proper drink, proper shelter, or proper veterinary care.
(d) Abandons any animal. A person shall not be considered to have abandoned an animal if he delivers to an animal control center an animal which he found running at large.
(e) Impounds or confines or causes to be impounded or confined in a pound or other place, a living animal and fails to supply it during such confinement with proper food, proper drink, and proper shelter.
(f) Carries, or causes to be carried, a living animal in or upon a vehicle or otherwise, in a cruel or inhumane manner.
(g) Unjustifiably administers any poisonous or noxious drug or substance to any domestic animal or unjustifiably exposes any such drug or substance, with intent that the same shall be taken or swallowed by any domestic animal.
(h) Injures any animal belonging to another person without legal privilege or consent of the owner.
(i) Mistreats any living animal by any act or omission whereby unnecessary or unjustifiable physical pain, suffering, or death is caused to or permitted upon the animal.
(j) Causes or procures to be done by any person any act enumerated in this Subsection.
D. For purposes of this Section, fowl shall not be defined as animals. Only the following birds shall be identified as animals for purposes of this Section:
(1) Order Psittaciformes-parrots, parakeets, lovebirds, macaws, cockatiels or cockatoos.
(2) Order Passeriformes-canaries, starlings, sparrows, flycatchers, mynah or myna.
Plaintiffs suggested that LA.REV.STAT. § 14:102.1(D) legislatively excluded "fowl" from the provisions of the statute, indicating the Legislature's implicit endorsement of cockfighting.
On February 3, 2004, the trial court issued a written ruling on the request for preliminary injunction, finding that Plaintiffs had made a prima facie showing that the Parish had usurped or improperly invaded the police power reserved to the State under the Louisiana Constitution. Plaintiffs' request for a declaratory judgment and for a permanent injunction were deferred until a trial on the merits. The trial court's final judgment was signed on March 1, 2004.
On March 11, 2004, Caddo Parish filed an appeal to the Second Circuit Court of Appeal. On October 6, 2004, after reviewing briefs and hearing oral argument, the appellate panel affirmed the trial court ruling. The appellate court held that the Parish ordinance conflicted with an act of the State Legislature, since the Parish ordinance declared illegal an activity that the State deemed to be legal. Savage v. Prator, 38,955 (La.App. 2 Cir. 10/6/04); 886 *54 So.2d 523, rehearing denied 10/29/04. However, in his dissent, Judge Stewart remarked:
The majority opinion concludes that Section 4-14 of the Caddo Parish Code of Ordinances conflicts with state law. However, in my view, there is no conflict between Section 4-14 and La. R.S. 14:102.1 which supports injunctive relief. I respectfully dissent from the majority opinion. Because cockfighting is not defined as a felony under state law, the parish ordinance is not prohibited by La. R.S. 14:143, which provides that "no governing authority of a political subdivision shall enact an ordinance defining as an offense conduct that is defined and punishable as a felony under state law." Moreover, La. R.S. 14:102.1 is silent as to cockfighting. The legislature simply chose not to define fowl as animals in the provision criminalizing cruelty to animals. State law neither expressly authorizes, prohibits, nor attempts to regulate cockfighting. In the absence of state law on the matter, the parish ordinance is not invalid on its face. It does not contravene state law.
Id. at 527 (Stewart, J., dissenting). Caddo Parish timely sought a writ of certiorari from this Court to review the appellate court's affirmation of the trial court ruling, and the writ was granted by this Court. Savage v. Prator, 04-2904 (La.2/18/05); 896 So.2d 13.

DISCUSSION

A. HOME RULE CHARTER AUTHORITY
"Article VI of the Louisiana Constitution of 1974 includes a complicated set of provisions governing the powers of `local governmental subdivision[s],' a term that covers both parishes and municipalities." Kenneth M. Murchison, Local Government Law, 64 LA. L.REV. 275, 279 (2004). LA. CONST. art. VI, § 5 allows any parish or municipality to adopt a home rule charter. The powers of home rule charter governments, established subsequent to the adoption of the 1974 Louisiana Constitution, are governed by LA. CONST. art. VI, § 5(E), which provides:
Structure and Organization; Powers; Functions. A home rule charter adopted under this Section shall provide the structure and organization, powers, and functions of the government of the local governmental subdivision, which may include the exercise of any power and performance of any function necessary, requisite, or proper for the management of its affairs, not denied by general law or inconsistent with this constitution. (Emphasis added).
Caddo Parish is governed by a home rule charter which became effective January 9, 1984. Thus, Caddo Parish may exercise any power and/or perform any function granted by law. Kenneth M. Murchison, Local Government Law, 64 LA. L.REV. 275, 280 (2004). Notwithstanding the home rule charter government's broad authority to regulate local affairs not proscribed by general law, home rule charter authority is limited by LA. CONST. art. VI, § 9(B), which provides that "the police power of the state shall never be abridged."

1. Municipal Ordinances Invalid When In Contravention of General Law
Prior to the enactment of the 1974 Constitution, Louisiana courts did not hesitate to invalidate local ordinances containing any measure of conflict with the provisions of any general law enacted by the Legislature. For example, in National Food Stores of Louisiana, Inc. v. Cefalu, a grocery store sought injunctive relief to prevent the Town of Amite from enforcing its "Sunday closing ordinance." National *55 Food Stores of Louisiana, Inc. v. Cefalu, 280 So.2d 903, 906 (La.1973). Although the state Sunday Closing Law contained an exemption for "public and private markets," the town ordinance contained no such exemption. Id. at 906. This Court found that "the exemption provided in the state statute indicates that the Legislature expressly considered application of the Sunday Closing Law to supermarkets, but found that this type of business should not come within the law's prohibitions." Id. at 908. Accordingly, the City's Sunday closing ordinance was held to be inconsistent with general state law and thereby invalid. Id.
In reaching its decision, this Court relied upon an analogous earlier case, City of Alexandria v. LaCombe, 220 La. 618, 57 So.2d 206 (La.1953). In LaCombe, several defendants were arrested for violating the provisions of a City ordinance which prohibited all gambling "without reference as to how the same shall be conducted or operated." Id. at 207. The state criminal statute, however, prohibited only gambling conducted "as a business." Id. The Court found that the State intended to occupy the field on the issue of gambling, as the State had "in its latest enactment removed from a municipality the power which it had previously given to it to define gambling and itself passed a law specifically defining it." Id. at 210. The LaCombe court found that the Legislature, by prohibiting only gambling conducted "as a business," implicitly exempted recreational gambling from criminal enforcement. Id. at 209-10. Thus, although the City possessed concurrent jurisdiction to regulate gambling, its municipal authority was limited by the parameters of the State's definition of criminal conduct, as a municipality "has not the right to extend or enlarge upon the definition adopted by the Legislature." Id. at 209.
However, in cases decided subsequent to the enactment of the 1974 Louisiana Constitution, in recognition of a new philosophy of the state-local government relationship which struck a balance in favor of home rule, Louisiana courts have allowed home rule municipalities greater autonomy to regulate local affairs where the local ordinance is not in direct conflict with applicable state law. City of New Orleans v. Board of Commissioners of the Orleans Levee District, 93-0690 (La.7/5/94); 640 So.2d 237, 252. In Restivo v. City of Shreveport, for example, the City's Plumbing and Gas Piping Code prohibited licensed journeyman plumbers from practicing plumbing unless qualified as a master plumber by the City or employed by a City-qualified master plumber. Restivo v. City of Shreveport, 566 So.2d 669, 670 (La. App. 2 Cir.1990). The State, however, tested and licensed only journeyman plumbers and placed no limitations on a journeyman plumber's ability to work independently. Id. at 670.
The Restivo Court recognized the long-standing jurisprudence prohibiting a municipality from enacting ordinances inconsistent with or in contravention of state law. Id. at 671 (citations omitted). However, the Court found that a municipal ordinance which goes further in its prohibitions than a state statute is valid so long as it does not forbid what the Legislature has expressly or implicitly authorized. Id. (citing City of Shreveport v. Curry, 357 So.2d 1078 (La.1978)); National Food Stores of Louisiana, Inc. v. Cefalu, 280 So.2d 903 (La.1973). Under the facts present in Restivo, the Court found that:
[S]ince neither the Legislature nor the State Plumbing Board has provided for testing the qualifications of those persons desiring to progress to the status of a master plumber, it appears that the state has not preempted this area of *56 regulation and there is no conflict between the City Code and the state law in this respect.
Id.
More recently, in City of Baton Rouge v. Williams, this Court upheld a municipal ordinance which provided for a penalty greater than that imposed by the State. City of Baton Rouge v. Williams, 95-0308 (La.10/16/95); 661 So.2d 445, 450. In that case, the defendant was issued a citation for disturbing the peace by fistic encounter, a misdemeanor violation of a Baton Rouge City ordinance. Id. at 447. Williams argued that the city ordinance, under which he was charged, was unconstitutional, as it imposed a penalty in excess of that imposed by the State for the same offense. Id. The city prosecutor argued that its home rule charter granted the City the authority to enact ordinances and provide for penalties not to exceed the maximum penalties allowed under state law for offenses falling within the jurisdiction of the city court. Id. This Court held that the ordinance was not in conflict with the general law of the State, as "there exists no statute which specifically places a ceiling on the penalty that a municipality may set for disturbing the peace." Id. at 449 (emphasis added). The Williams Court ultimately held that the ordinance was a proper exercise of the City's home rule charter authority, as the ordinance did not conflict with the general law of the State, did not abridge the State's police power, did not violate the equal protection clause, nor did it overstep the limits of the City's home rule charter. Id. at 452.
Turning to the instant matter, it is clear that the State Legislature has not enacted any general law which either explicitly or implicitly authorizes or provides criminal sanctions for fighting cocks and chickens. LA.REV.STAT. § 14:102.1 is silent with regard to cockfighting, as well as all other sports or amusements involving animals; therefore, the present case is distinguishable from National Food Stores of Louisiana, Inc. and LaCombe. In National Food Stores of Louisiana, Inc., grocery stores were explicitly exempt from criminal enforcement of the State's `Sunday Closing Law.' Here, there is no applicable state law which explicitly authorizes that cockfighting events may be staged, or specifically prohibits home rule charter municipalities from enacting ordinances which proscribe cockfighting events. Similarly, the state law applicable in LaCombe explicitly defined gambling, and thus, any activities not encompassed by the definition were implicitly exempt. Here, LA. REV.STAT. § 14:102.1 makes no mention of any sporting event involving animals as a form of cruelty for which a participant or promoter may be prosecuted; therefore, the failure to mention cockfighting does not rise to the level of implicit authorization of the activity.
The Legislature has simply chosen to exclude "fowl" as animals warranting protection under the applicable statute criminalizing cruelty to animals. Such silence cannot be construed to mean that cockfighting has thereby been authorized by the Legislature. The court of appeal erred in holding that LA.REV.STAT. § 14:102.1(D) was amended in response to a controversy surrounding cockfighting. Savage v. Prator, 38,955 (La.App. 2 Cir. 10/6/04); 886 So.2d 523, 525, rehearing denied 10/29/04. The legislative history associated with the amendment reflects no such controversy.[2]
Further, although dogs are subject to the protection of LA.REV.STAT. § 14:102.1, *57 the Legislature enacted LA.REV.STAT. § 14:102.5, which prohibits dogfighting and all incidents thereof.[3] In addition, sporting events involving combat between one or more domestic or feral canines or hogs are prohibited by LA.REV. STAT. § 14:102.19, even though these animals are not exempt from the protection of LA.REV.STAT. § 14:102.1. If LA.REV.STAT. § 14:102.1 contemplated any form of animal combat, as Respondents submit, then statutes prohibiting dogfighting and dog-hog fighting would be superfluous. Conversely, while the Legislature has authorized and provided for the regulation of horse racing[4] and prohibited dog racing,[5] Louisiana Revised Statutes Title 4, governing "Amusements and Sports," is silent with regard to cockfighting. Thus, a local ordinance which prohibits cockfighting is not in conflict with any general state law authorizing the sport.
*58 This matter is closely analogous to the decisions reached in Restivo and Williams. In Restivo, the Second Circuit held that the Shreveport ordinance was not in conflict with applicable state law, as the State had not preempted the field by providing testing and licensing for master plumbers. Similarly, in Williams, this Court required the existence of a specific state law which placed a ceiling on the penalty that a municipality may set for the violation of a misdemeanor. Here, the State has passed no general law which may be interpreted as an attempt to preempt the field with regard to authorizing, prohibiting, or regulating cockfighting. Further, no specific state law prohibits cockfighting, or authorizes that cockfighting tournaments be permitted. Local governments therefore may authorize or prohibit the conduct of cockfighting tournaments within municipal boundaries.

CONCLUSION
For the foregoing reasons, we conclude that Caddo Parish Ordinance No. 2432, Section 4-14 prohibiting cockfighting does not offend a Louisiana constitutional or statutory provision. Louisiana has no law which authorizes, explicitly or implicitly, cockfighting, nor does the State have a law which prohibits a local government from establishing an ordinance regulating cockfighting. Accordingly, without any such prohibition or offense to Louisiana's Constitution or current and applicable statutes,[6] there is no unconstitutionality or illegality regarding the ordinance, and therefore, an absence of one of the three mandatory requirements necessary to support a preliminary injunction.[7] Accordingly, we reverse the rulings of the lower courts, vacate the preliminary injunction, and remand this case to the trial court for further proceedings not inconsistent with this opinion.
REVERSED; INJUNCTION VACATED; REMANDED TO DISTRICT COURT.
NOTES
[1] We note that forty-eight (48) states ban cockfighting, and thirty-one (31) states make cockfighting a felony offense. Motion for Leave to Appear as Amicus Curiae and to File Amicus Curiae Brief in Support of the Defendants-Applicants, Steve Prator, Sheriff of Caddo Parish and the Caddo Parish Commission at 1, Claddie Savage d/b/a Piney Woods Game Club and Ark-La-Tex Game Club, Inc. v. Steve Prator, Sheriff of Caddo Parish and the Caddo Parish Commission, No. 04-2904 (La.2/18/05); 896 So.2d 13.
[2] In 1982, the Legislature revised former article LA. REV. STAT. § 14:102, reenacted as LA. REV.STAT. § 14:102.1 through LA.REV.STAT. § 14:102.5. During a committee meeting, Representative Bruneau discussed Senate Bill 180 and explained "that the bill provided with respect to the prohibition of cruelty to animals, defines cruelty and provides penalties. It also provided for seizure of cruelly treated animals and for search warrants and other methods of seeing that animals are properly treated. He further explained that Louisiana was known as a `dogfighting state'. Laws have been passed in many other states similar to Senate Bill 180." Louisiana State Senate, Committee on Administration of Criminal Justice, Verbatim Minutes of Meeting, June 24, 1982.

During a May 18, 1982 committee meeting, "Senator Ginn moved that fighting cocks and chickens be excluded from the penalties of Senate Bill No. 180, and the suggested amendment was adopted, without objection." No additional statements were made with regard to the exclusion or inclusion of fowl under the provisions of the statute. Louisiana State Senate, Committee on Judiciary, Section C, Verbatim Minutes of Meeting, May 18, 1982. The final version of Acts 1982, No. 431, which became LA.REV.STAT. § 14:102.1(C) stated, "This Section shall not apply to the lawful hunting or trapping of wildlife as provided by law, accepted veterinary practices and activities carried on for scientific or medical research governed by accepted standards. For purposes of this Section, fowl shall not be defined as animals."
In 1983, LA.REV.STAT. § 14.102.1(C) was amended. During a committee meeting, Representative Bruneau stated that House Bill No. 4 "was technical in nature and was designed to correct a typographical error in the provision providing exceptions for herding of domestic animals." Louisiana State House of Representatives, Committee on Administration of Criminal Justice, Verbatim Minutes of Meeting, January 5, 1983. The final version of Acts 1983, 1st Ex.Sess. No. 6, § 1 included the additional language "herding of domestic animals" injected between the provisions for lawful hunting and accepted veterinary practices. Further, the provision excluding fowl was re-designated as Subsection D, although the language was the same as that included in Acts 1982, No. 431.
In 1995, the Legislature amended LA.REV. STAT. § 14:102.1(D) by including several species of birds which are defined as animals and thereby protected from acts of animal cruelty. However, when Senator Brinkhaus offered the amendment, no comments regarding cockfighting were made. Louisiana State Senate, Senate Judiciary Committee, Section C, Verbatim Minutes of Meeting, June 6, 1995.
[3] A. No person shall intentionally do any of the following:

(1) For amusement or gain, cause any dog to fight with another dog, or cause any dogs to injure each other.
(2) Permit any act in violation of Paragraph (1) to be done on any premises under his charge or control, or aid or abet any such act.
(3) Promote, stage, advertise, or be employed at a dogfighting exhibition.
(4) Sell a ticket of admission or receive money for the admission of any person to any place used, or about to be used, for any activity described in Paragraph (2).
(5) Own, manage, or operate any facility kept or used for the purpose of dogfighting.
(6) Knowingly attend as a spectator at any organized dogfighting event.
(7)(a) Own, possess, keep, or train a dog for purpose of dogfighting.
[4] LA.REV.STAT. § 4:141 et seq.
[5] LA.REV.STAT. § s4:249.
[6] Art. VI § 5(e) of the Louisiana Constitution prohibits a local ordinance that contradicts general law.
[7] A court should not grant a preliminary injunction when criminal action is threatened unless the plaintiff shows with reasonable certainty that (1) the statute is manifestly unconstitutional, (2) irreparable injury is threatened, and (3) existing property rights will be destroyed by enforcement. Knights of Columbus, Chapter No. 2409 v. Louisiana Department of Public Safety & Corrections, Division of State Police, 548 So.2d 936 (La.1989).