Dear Ms. Alcock:
On behalf of the Terrebonne Parish Consolidated Government (hereafter, "TPCG") you have asked this office to answer several questions relative to the authority of animal control officers employed by the Animal Control Division of TPCG to enforce animal-related crimes defined by state law. You have further asked this office to address the validity of a TPCG ordinance which provides a greater penalty than state law relative to the crime of cruelty to animals. To avoid repetition, we have combined those questions which raise similar issues, as follows.
I. Is a TPCG animal control officer required to be P.O.S.T.certified in order to issue summons and citations for violations ofall animal-related crimes defined by state law, or is it sufficientthat the animal control officer be commissioned by the AnimalControl Division of TPCG in order to exercise such law enforcementauthority?
The commissioning of animal control officers to issue summons and citations for animal-related State crimes is governed by La.R.S. 3:2501. Terrebonne Parish, where the population exceeds one hundred thousand but is less than one hundred fifty thousand, is addressed in this statute as follows:
 A. Any animal control agency maintained by a parish governing authority described in Subsection B of this Section shall be authorized to commission such animal control officers as provided in Subsection B of this Section as animal control investigators or specialists of the agency who, if P.O.S.T. certified, shall exercise *Page 2 
regular police powers of the state granted to law enforcement officers. Any such investigator or specialist shall be empowered to enforce all animal-related crimes defined by ordinance or state law including but not limited to animals at large, animal cruelty, dog fighting, animal theft, or any law or ordinance governing animal disease control.
 B. The commissioning of animal control officers designated in Subsection A of this Section shall be applicable only to those parishes who maintain animal control agencies with a population of over fifty thousand, according to the most recent federal decennial census as follows, subject to the following limitations:
 * * * * * (2) An animal control agency in a parish with a population of over one hundred thousand, according to the most recent federal decennial census but less than one hundred fifty thousand according to the most recent federal decennial census, may commission two P.O.S.T. certified animal control officers.
We point out that Subsections (A) and (B)(2) of La.R.S. 3:2501, when read together, would authorize the TPCG Animal Control Division to commission two P.O.S.T. certified animal control officers." Reading Subsection (A) of La.R.S. 3:2501 in parimateria with Subsection (B)(2), therefore, it is the opinion of this office that the TPCG Animal Control Division may commission only two P.O.S.T. certified animal control officers who could exercise the police powers of law enforcement officers with respect to laws and ordinances that establish animal-related crimes.
Parish governing authorities do have the power to adopt ordinances establishing animal control programs and animal shelters. See La.R.S. 3:2731-2778. However, we also note that under La.R.S. 3:2501(A), the ability of an animal control investigator or specialist to "exercise regular police powers of the state granted to law enforcement officers" is contingent upon that officer's P.O.S.T. certification. Once certified, La.R.S. 3:2501(A) provides that animal control investigators or specialists are "empowered to enforce all animal-related crimes defined by ordinance or state law."
The implication in your first question is that under La.R.S. 3:2501 (A) the issuance of a "commission" by a parish animal control agency to animal control officers lacking P.O.S.T. certification is sufficient authorization for those officers to issue summons and citations for violations of all animal-related crimes defined by local ordinance and by state law. However, as already noted, the language of La.R.S. 3:2501 (A) and (B)(2) contradicts this implication, insofar as the language of the statute indicates that the issuance of law enforcement commissions by an *Page 3 
animal control agency is limited to those animal control officers who have obtained P.O.S.T. certification. Any other animal control or animal shelter personnel would not have the law enforcement authority referenced in La.R.S. 3:2501(A).
Further, we also point out here that La.R.S. 3:2501(A) directs that the exercise of police powers by an animal control officer is based upon that officer's P.O.S.T. certification. This office has previously determined that the phrase police power can be defined as the power to carry out the permanent duties of apeace officer, as defined by La.R.S. 40:2402(3)(a). Under La.R.S. 40:2402(3)(a), the permanent duties of a peace officer "actually include the making of arrests." The issuance of a summons is in lieu of an arrest and is discretionary on the part of a peace officer under La.C.Cr.P. art. 211.[1]
Accordingly, it is the opinion of this office that La.R.S. 3:2501 (A) requires TPCG animal control officers to be P.O.S.T. certified in order to exercise police powers and be vested with the authority to arrest, or to issue summons in lieu of arrest to, those individuals for violating either parish ordinances or state law relative to animal-related crimes.
II. How does TPCG's Animal Control Division commission itsanimal control officers? Is it enough to declare in the Animal Codethat any person hired in the capacity of an animal control officerand employed by the TPCG in its Animal Control Division isautomatically commissioned as an animal control investigator orspecialist of the parish? Are the provisions offered by TerrebonneParish sufficient to commission animal investigators or specialistswithin the Animal Control Authority and empower them to enforce theTerrebonne Parish Animal Code as well as all animal-related crimesdefined by ordinance or state law?
Our response here is to restate our conclusion discussed above, specifically, that the language of La.R.S. 3:2501 (A) and (B)(2) requires that law enforcement-type *Page 4 
commissions issued by the TPCG's Animal Control Division may only be issued to those animal control officers who are P.O.S.T. certified, and the TPCG is limited to two such commissioned officers.
We also point out that the governing authority for the TPCG operates under the provisions of a home rule charter adopted in 1981 pursuant to Article VI § 5(E) of the Louisiana Constitution. The legislative powers of home rule charter governments, established subsequent to the adoption of the 1974 Louisiana Constitution, are governed by La.Const. art. VI, § 5(E), which provides:
 Structure and Organization; Powers; Functions. A home rule charter adopted under this Section shall provide the structure and organization, powers, and functions of the government of the local governmental subdivision, which may include the exercise of any power and performance of any function necessary, requisite, or proper for the management of its affairs, not denied by general law or inconsistent with this constitution.
[Emphasis added].
The legislative authority granted a parish governing authority operating under a post-1974 home rule charter is limited to those enactments which "are not denied by general law." It is the opinion of this office that a parish ordinance which purports to bestow arrest or law enforcement authority upon an animal control officer who has not met statutory P.O.S.T. certification requirements would be invalid under La.Const. art. VI, § 5(E) as being "denied by general law" found at La.R.S. 3:2501 (A) and (B)(2), which makes mandatory such P.O.S.T. certification requirements.
III. Does any other state law address the authority of animalcontrol officers to enforce animal-related crimes defined by statelaw?
Our research reflects the following: La.R.S. 14:102.6 permits an animal control officer to seize and humanely euthanize fighting dogs, while La.R.S. 14:102.13 authorizes an animal control officer to file a petition in the district court requesting a hearing for the purpose of determining whether or not a dog should be declared dangerous. Finally, La.R.S. 14:102.18 authorizes an animal control officer to seize any dog which when unprovoked, in an aggressive manner, causes the death of or inflicts bodily injury on a human being. We further observe that the state animal control law authorizes any citizen to seize stray dogs and we have previously stated our position that a parish government may appoint a particular person or entity to be responsible for enforcing civil dog seizure ordinances and laws. See La. Atty. Gen. Op. 03-0276; La.R.S. 3:2773. *Page 5 
 IV. Is a proposed ordinance valid that establishes a five yearprohibition and fine for those convicted of simple and aggravatedcruelty to animals, or does it abridge La.R.S. 14:102.1(A)(2)(b)which gives the court discretion regarding the duration of therestriction relative to animal ownership?
La.R.S. 14:102.1(A)(2)(b) defines and provides criminal penalties for simple and aggravated cruelty to animals. Part (A)(2)(b) of that statute provides that, in addition to a fine and prison sentence for any second and subsequent violations of the crime of simple cruelty to animals, "the court shall issue an order prohibiting the defendant from owning or keeping animals for a mandatory period of time deemed appropriate by the court."
The parish proposes to enact an ordinance creating the parish crimes of simple and aggravated cruelty to animals, which would be defined as the same activity prohibited by state law in La.R.S. 14:102.1(A)(2)(b). But this proposed ordinance differs from the state statute in that the local ordinance makes it unlawful for those convicted of simple and aggravated cruelty to animals to own or keep animals for a mandatory period of five (5) years from the date of the act resulting in the conviction.
Here, the proposed parish ordinance would prohibit those convicted of simple or aggravated animal cruelty from animal ownership for a mandatory period of five years. In contrast, under state law, while the court must impose as a penalty a period of time in which those convicted may not own or keep animals, the period of time is not specifically provided for, but instead is to be determined at the discretion of the court on a violation of the state law. The question becomes whether or not the parish ordinance would be invalid as conflicting with state law on the same subject matter.
We find the case of Savage v. Prator, 921 So.2d 51 (La. 2006) applicable here. In Savage, the Louisiana Supreme Court concluded that an ordinance adopted by the post-1974 home rule government of Caddo Parish which provided criminal penalties for cockfighting did not violate general law or infringe upon the police powers of the state, even though state law did not specifically provide protection to "fowl" under state law criminalizing cruelty to animals. The following discussion by the Court in Savage is instructive:
 . . . in cases decided subsequent to the enactment of the 1974 Louisiana Constitution, in recognition of a new philosophy of the state-local government relationship which struck a balance in favor of home rule, Louisiana courts have allowed home rule municipalities greater autonomy to regulate local affairs where the local ordinance is not in direct conflict with applicable state law. *Page 6 
 In Restivo v. City of Shreveport, 566 So.2d 669, 670 (La.App. 2 Cir. 1990), for example, the City's Plumbing and Gas Piping Code prohibited licensed journeyman plumbers from practicing plumbing unless qualified as a master plumber by the City or employed by a City-qualified master plumber. The State, however, tested and licensed only journeyman plumbers and placed no limitations on a journeyman plumber's ability to work independently. Id. at 670.
 The Restivo Court recognized the longstanding jurisprudence prohibiting a municipality from enacting ordinances inconsistent with or in contravention of state law. Id. at 671. However, the Court found that a municipal ordinance which goes further in its prohibitions than a state statute is valid so long as it does not forbid what the Legislature has expressly or implicitly authorized.
The Court in Savage further discussed the case of City ofBaton Rouge v. Williams, 95-0308 (La. 10/16/95);661 So.2d 445, in which the Court upheld a municipal ordinance which provided for a penalty greater than that imposed by the State. In that case, the defendant was issued a citation for disturbing the peace by fistic encounter, a misdemeanor violation of a Baton Rouge City ordinance. The defendant argued that the city ordinance, under which he was charged, was unconstitutional, as it imposed a penalty in excess of that imposed by the State for the same offense. The city prosecutor argued that its home rule charter granted the City the authority to enact ordinances and provide for penalties not to exceed the maximum penalties allowed under state law for offenses falling within the jurisdiction of the city court. The Louisiana Supreme Court held that the ordinance was not in conflict with the general law of the State, as "there exists no statute which specifically places a ceiling on the penalty that a municipality may set for disturbing the peace." Id. at 449.
As noted, in City of Baton Rouge v. Williams, the Louisiana Supreme Court upheld a municipal ordinance which provided for a penalty greater than that imposed by the State. However, here we point out that the Terrebonne Parish animal cruelty ordinance cannot be read to impose a penalty in excess of that imposed by the State for the same offense, because although a court must impose a prohibition on animal ownership for a period of time for a violation of the state animal cruelty statute, the court has the discretion to determine the duration of the restriction, and can impose a prohibition of animal ownership for a period of time inexcess of five years, the maximum penalty provided for by the parish ordinance. Accordingly, it is the opinion of this office that the Terrebonne Parish ordinance relative to animal cruelty is a valid exercise of the legislative authority granted a home rule charter entity under La.Const. art. VI, § 5(E), and does not conflict with general state law regarding the same offense. *Page 7 
We hope the foregoing is helpful to you. Should you have other questions with which we may provide assistance, please contact this office.
 Very truly yours, JAMES D. "BUDDY" CALDWELL ATTORNEY GENERAL
 BY:__________________________ KERRY L. KILPATRICK ASSISTANT ATTORNEY GENERAL
 KLK:arg
[1] Art. 211. Summons by officer instead of arrest and booking
A.(1) When it is lawful for a peace officer to arrest a person without a warrant for a misdemeanor, or for a felony charge of theft or illegal possession of stolen things when the thing of value is five hundred dollars or more but less than one thousand dollars, he may issue a written summons instead of making an arrest if all of the following exist:
(a) The officer has reasonable grounds to believe that the person will appear upon summons.
(b) The officer has no reasonable grounds to believe that the person will cause injury to himself or another or damage to property or will continue in the same or a similar offense unless immediately arrested and booked.
(c) There is no necessity to book the person to comply with routine identification procedures.
(d) If an officer issues a summons for a felony described in this Paragraph, the officer issuing the summons has ascertained that the person has no prior criminal convictions.
(2) In any case in which a summons has been issued, a warrant of arrest may later be issued in its place.